Roberta J. EMMONS, Plaintiff
Below, Appellant,

v.

HARTFORD UNDERWRITERS INSUR-
ANCE COMPANY, a foreign corpora-
tion, Defendant Below, Appellee.

No. 303, 1996.

Supreme Court of Delaware.

Submitted: May 13, 1997.

Decided: July 30, 1997.

Rick S. Miller (argued) and David J. Ferry, Jr. of Ferry & Joseph, P.A., Wilmington, for Appellant.

Ian Connor Bifferato (argued) and Vincent A. Bifferato, Jr. of Bifferato, Bifferato & Gentilotti, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court En Banc.

VEASEY, Chief Justice:

In this appeal, we consider whether a wife is legally entitled to recover uninsured motorist ("UM") benefits for the wrongful death of her husband up to the "per accident" limit of their joint automobile insurance policy, when the decedent's estate has already recovered through the operation of Delaware's survival statute the maximum amount of damages available under the "per person" limits of the policy. We hold that, under the language of the policy, the wife is an insured who is legally entitled to recover UM benefits. We further hold that, because the policy does not provide that all claims arising out of the "bodily injury" of an insured by an uninsured motorist are limited by the "per person" limit of the policy, the wife may recover damages up to the policy's "per accident" limit. Accordingly, we reverse and remand this case to the Superior Court to enter judgment for the wife in accordance with this opinion.

### Facts

On June 16, 1994, Keith Emmons, Sr., was severely injured when, in the parking lot of a service station, he was struck by a car and dragged approximately twenty feet. Mr. Emmons died from his injuries twenty-six days later. The driver of the car was uninsured.

At the time of the accident, Mr. Emmons and his wife, plaintiff below-appellant, Roberta J. Emmons, were insured under an automobile policy issued by defendant below-appellee, Hartford Underwriters Insurance Company. The policy provided uninsured/underinsured ("UM/UIM") motorist coverage in the amounts of $100,000 per person and $300,000 per accident.

While Mr. Emmons was still alive, Mrs. Emmons submitted a claim for UM benefits under the policy. Hartford took no action on her claim.

After Mr. Emmons had died, his son by a previous marriage and the executor of his estate, Keith Emmons, Jr., also made a claim for UM benefits under the policy. The executor of Mr. Emmons' estate had the right to recover benefits in the name of the deceased.[1] On December 23, 1994, Hartford paid $100,000 to the executor in satisfaction of the estate's claim. Mrs. Emmons did not participate in the settlement.

Hartford subsequently denied Mrs. Emmons' claim. She filed a complaint in Superior Court in which she alleged that Hartford had breached its duties under the automobile insurance contract when it denied to her UM benefits for the wrongful death of her husband. Delaware's Wrongful Death Act provides, "An action may be maintained against a person whose wrongful act causes the death of another."[2] The Act further provides, "An action under this subchapter shall be for the benefit of the spouse, parent and child of the deceased person."[3] A wrongful death action is separate and distinct from a survival action, which is also defined by statute in Delaware as follows:

All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of ac-

---

**1.** 10 *Del.C.* § 3701 provides in pertinent part:

All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or

prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. . . .

**2.** 10 *Del.C.* § 3722(a).

**3.** 10 *Del.C.* § 3724(a).

tion accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. This section shall not affect the survivorship among the original parties to a joint cause of action.[4]

This Court summarized the difference between the two causes of action in *Thompson v. D'Angelo:*

> In *Mohler v. Worley,* [179 Pa.Super. 56, 116 A.2d 342 (1955),] it was pointed out that the statutory wrongful death action represents a cause unknown at common law and is for the benefit of certain enumerated relatives of the person killed whose damages "are measured by the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived." [*Mohler,* 116 A.2d at 344.] A survival action is contrasted as a continuation of the right of action which accrued to the deceased at common law and which he could have maintained himself but for his death thereafter. Recovery under a survival action is measured by the pecuniary loss occasioned to the deceased himself, and therefore to his estate. [*Id.* at 345.][5]

Mrs. Emmons brought this action in attempt to collect from her automobile insurance company wrongful death damages that she would have collected from the motorist, except he was uninsured. She brought this action under the UM/UIM endorsements of the automobile insurance policy that she shared with her husband. That language states:

A. We will pay damages which an insured is legally entitled to recover from the owner or operator of an:
1. Uninsured motor vehicle ... because of bodily injury:
   a. Sustained by an insured; and
   b. Caused by an accident.

The parties dispute the interpretation of the insurance policy. Mrs. Emmons interprets the policy language as follows:

A. We will pay damages which an insured *(i.e. Mrs. Emmons)* is legally entitled to recover from the owner or operator of an:
1. Uninsured motor vehicle ... because of bodily injury:
   a. Sustained by an insured *(i.e. Mr. Emmons);* and
   b. Caused by an accident.[6]

Hartford, on the other hand, reads the insurance policy so as to preclude Mrs. Emmons' recovery:

A. We will pay damages which an insured *(i.e. Mr. Emmons)* is legally entitled to recover from the owner or operator of an:
1. Uninsured motor vehicle ... because of bodily injury:
   a. Sustained by insured *(i.e. Mr. Emmons);* and
   b. Caused by an accident.[7]

Hartford and Mrs. Emmons filed cross motions for summary judgment in the Superior Court. After oral argument on the motions, the Superior Court ruled from the bench, denying Mrs. Emmons' motion for summary judgment and granting Hartford's motion. The Superior Court held that Mrs. Emmons' claim for UM benefits was subject to the "per person" limit of the policy, rather than the "per accident" limit. The Superior Court found that Hartford had discharged its contractual duties under the policy when it tendered $100,000 to the estate of the deceased.

### Scope and Standard of Review

The interpretation of insurance contracts involves legal questions and thus the standard of review is de novo.[8] A grant of summary judgment cannot be sustained unless there is no genuine issue of material fact and the movant is entitled to judgment

---

4. 10 *Del.C.* § 3701.

5. *Thompson v. D'Angelo,* Del.Supr., 320 A.2d 729, 733 (1974).

6. Italicized language supplied.

7. Italicized language supplied.

8. *Playtex FP, Inc. v. Columbia Cas. Co.,* Del. Supr., 622 A.2d 1074, 1076 (1992).

as a matter of law.[9] When opposing parties make cross motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[10]

### General Principles

■■■ Under Delaware law, the interpretation of contract language is treated as a question of law.[11] The scope of an insurance policy's coverage obligation is prescribed by the language of the policy.[12] "[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning...."[13] If ambiguity exists in the contract, it "is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted."[14]

In *Penn Mutual Life Insurance Co. v. Oglesby*, this Court recently summarized our approach to interpreting insurance contracts.[15] We said:

> [Insurance contracts] must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and the limitations of coverage. It is the obligation of the insurer to state clearly the terms of the policy, just as it is the obligation of the issuer of securities to make the terms of the operative document understandable to a reasonable investor whose rights are affected by the document. Thus, if the contract in such a setting is ambiguous, the principle of *contra proferentem* dictates that the contract must be construed against the drafter.

> The policy behind this principle is that the insurer or the issuer, as the case may

be, is the entity in control of the process of articulating the terms. The other party, whether it be the ordinary insured or the investor, usually has very little say about those terms except to take them or leave them or to select from limited options offered by the insurer or issuer. Therefore, it is incumbent upon the dominant party to make the terms clear. Convoluted or confusing terms are the problem of the insurer or issuer—not the insured or investor.[16]

### Application of General Principles to the Instant Case

■■■ The starting point for our analysis is the policy language. In a section entitled "Uninsured Motorists Coverage—Delaware," the policy states:

A. We will pay damages which an insured is legally entitled to recover from the owner or operator of an:

1. Uninsured motor vehicle ... because of bodily injury:

a. Sustained by an insured; and

b. Caused by an accident.

The policy then defines "insured":

B. "Insured" as used in this endorsement means:

1. You or any family member.

2. Any other person occupying your covered auto.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

Under the plain language of the contract, Hartford agreed to pay all damages that "an insured" is legally entitled to recover from the owner or operator of an uninsured vehi-

---

9. Super.Ct.Civ.R. 56(c); *Playtex*, 622 A.2d at 1076.

10. *Playtex*, 622 A.2d at 1076.

11. *Id.*

12. *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, Del.Supr., 616 A.2d 1192, 1195–96 (1992).

13. *Hallowell v. State Farm Mut. Auto. Ins. Co.*, Del.Supr., 443 A.2d 925, 926 (1982).

14. *Hallowell*, 443 A.2d at 926.

15. *Penn Mut. Life Ins. Co. v. Oglesby*, Del.Supr., 695 A.2d 1146, 1149–50 (1997).

16. *Id.*, 695 A.2d at 1149–50 (citations omitted); *see also Mason v. United Servs. Auto. Ass'n*, Del. Supr., 697 A.2d 388, 394 (1997).

cle because of bodily injury sustained by "an insured." We note that, in drafting the provision, Hartford repeatedly used the indefinite article "an" instead of "the" or "the same" or "such" or other language that would have limited the insureds who are eligible to recover UM benefits to those who had sustained bodily injury.

We find that Hartford's UM/UIM provision does not restrict payment to those who have suffered bodily injury. Under the language of Mrs. Emmons' policy, both the decedent and the plaintiff are "insureds" who are "legally entitled to recover" damages from an uninsured motorist because of "bodily injury" sustained by "an insured." Decedent's estate is legally entitled to recover damages through the operation of Delaware's survival statute. Mrs. Emmons is legally entitled to recover damages through the operation of the Wrongful Death Act.

### Applicable Limit of Liability

■ Plaintiff's policy provides UM/UIM coverage in the amounts of $100,000 per person and $300,000 per accident. Mrs. Emmons argues that because she had a claim for damages resulting from wrongful death, she should have access to her policy's "per accident" limit of liability. The UM/UIM section of Mrs. Emmons' policy contains a Limit of Liability clause that reads in pertinent part, "The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident." It makes no reference to the policy's "per person" limit of liability.

**17.** *See* 1 Widiss, *Uninsured and Underinsured Motorist Insurance* §§ 12.4, 13.5, 13.5(E)(1) (2d ed. 1992) (insurance policies usually provide that the amount of coverage specified on the declarations page under the "Limits of Liability" for "Each Person" is the amount of coverage provided for all damages due to bodily injury of one person).

**18.** *Gill v. Nationwide*, 1994 WL 150902, 1994 Del.Super. LEXIS 190, Ridgely, P.J. (Feb. 22, 1994).

**19.** *Id.* at *2, at *5.

**20.** *See also Ortiz v. White*, 1993 WL 331067, 1993 Del.Super. LEXIS 257, Babiarz, J. (May 6, 1993). In *Ortiz*, the plaintiffs argued that they should have access to the liability carrier's per accident

Unlike Hartford, many insurers place language in the UM/UIM portions of their policies that restricts the right of recovery to the "per person" limit when only one person has suffered actual bodily injury and other claimants pursue "consequential claims" such as claims for wrongful death or loss of consortium.[17] Such a clause was involved in *Gill v. Nationwide*, in which a surviving spouse and children of the decedent made a claim for UM/UIM benefits from their own carrier and argued that the "per accident" limit should apply rather than the "per person" limit.[18] Their policy provided:

> Bodily injury limits shown for any person are for all legal damages, including loss of services, claimed by anyone for bodily injury to one person as a result of one accident. Subject to this limit for any one person, the total limit of our liability shown is for all damages, including loss of services, due to bodily injury to two or more persons in any one occurrence.[19]

The clause cited above does what Hartford's UM/UIM Limit of Liability clause does not do: it consolidates all potential damages flowing from the bodily injury of one person into the "per person" limit.[20]

■ The UM/UIM section of Mrs. Emmons' policy does not contain language that restricts the right of recovery to the "per person" limit when only one person has suffered actual bodily injury. Contract interpretation that adds a limitation not found in the plain language of the contract is untena-

limits rather than its per person limits. Again, the policy language of the UM/UIM coverage limited liability to the per person limit:

> The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

*Id.* at *3, at *7–*8. Neither this language nor similar language was contained in Hartford's policy.

ble.[21] Since "[i]t is the obligation of the insurer to state clearly the terms of the policy,"[22] we hold that the "per accident" rather than the "per person" limit of liability applies to Mrs. Emmons' claim for UM/UIM benefits. Accordingly, we reverse the Superior Court's ruling.

### Conclusion

■ An insurance policy "must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage."[23] Under the plain language of her policy, Mrs. Emmons is an insured who is legally entitled to recover uninsured motorist benefits for the wrongful death of her husband. Because her policy does not provide that all claims arising out of the "bodily injury" of an insured by an uninsured motorist are limited by the "per person" limit of the policy, Mrs. Emmons may recover damages up to the policy's "per accident" limit. Accordingly, we reverse and remand this case to the Superior Court to enter judgment for Mrs. Emmons in accordance with this opinion.

---

**21.** *Northwestern Nat. Ins. Co. v. Esmark,* Del. Supr., 672 A.2d 41, 44 (1996).

**22.** *Penn Mut.,* 695 A.2d at 1149–50.

**23.** *Penn Mut.,* 695 A.2d at 1149–50.