## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| MACQUARIE ELECTRONICS USA, INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. N16C-08-165 MMJ-CCLD |
| | ) |
| GLOBALFOUNDRIES U.S. INC., | ) ) |
| Defendant. | ) ) |

Submitted: October 5, 2016
Decided: December 22, 2016

Upon Plaintiff Macquarie Electronics USA, Inc.'s Motion for Summary Judgment
**GRANTED IN PART, DENIED IN PART**
Upon Defendant Globalfoundries U.S. Inc.'s Motion for Summary Judgment
**GRANTED IN PART, DENIED IN PART**

## OPINION

David A. Jenkins, Esq. (Argued), Smith, Katzenstein and Jenkins LLP, Bijan Amini, Esq., Noam M. Besdin, Esq., Attorneys for Plaintiff Macquarie Electronics USA, Inc.

Albert H. Manwaring, Esq. (Argued), Lewis H. Lazarus, Esq., Albert H. Carroll, Esq., Morris James LLP, Attorneys for Defendant Globalfoundries U.S. Inc.

**JOHNSTON, J.**

## PROCEDURAL CONTEXT

This litigation arises from an alleged breach of an equipment lease in January of 2016. On February 16, 2016, Plaintiff Macquarie Electronics USA, Inc. ("Macquarie") filed suit against Defendant Globalfoundries, U.S., Inc. ("Globalfoundries") in the Delaware Court of Chancery. Macquarie alleged breach of contract and unlawful conversion. The parties filed cross motions for summary judgment.

On August 8, 2016, the Court of Chancery dismissed the case for lack of jurisdiction. On August 19, 2016, Macquarie filed its Election to Transfer Action to Superior Court.

This Court heard oral argument on the previously-briefed cross motions on October 5, 2016. The Court will decide whether Macquarie is entitled to rent, attorneys' fees, and equipment return, or whether Macquarie's damages are limited to interest. At this stage of the proceedings, the Court will not decide whether Globalfoundries actually breached the leasing contract by failing to pay the purchase price timely.

## STATEMENT OF FACTS

On July 24, 2012, the parties entered into the Master Lease Agreement ("MLA"). Under the MLA, Globalfoundries agreed to lease from Macquarie certain equipment related to semiconductor manufacturing. The leasing term

1

("Lease Term") expired on December 31, 2015.

Upon the expiration of the Lease Term, Globalfoundries could elect to return the equipment to Macquarie, or to exercise the "End Term Purchase Option" under Section 22(d) of the MLA and purchase the equipment. The MLA provides that if Globalfoundries elected to exercise the purchase option, the purchase price would be the lesser of two amounts: the "Fair Market Value" and the "Purchase Cap." The Purchase Cap set the value of the equipment at $4,810,250. Globalfoundries timely elected to exercise the End Term Purchase Option.

Section 22(f) of the MLA establishes an appraisal process for determining the Fair Market Value of the equipment. First, the MLA provides the parties with an opportunity to agree on an appraiser to set the Fair Market Value of the equipment. If the parties cannot agree on an appraiser, then each party selects one appraiser. The two appraisers then appoint a third, independent appraiser. The three appraisers independently value the equipment. The two appraisals that are closest in value are averaged to establish the Fair Market Value of the equipment.

The parties were unable to agree on a single appraiser to set the Fair Market Value of the equipment. As a result, the parties each selected an appraiser. The two appraisers selected a third, independent appraiser. On December 24, 2015, the appraiser selected by Macquarie valued the equipment at $16.635 million. On December 31, 2015, the independent appraiser valued the equipment at $16.07

2

million. On January 31, 2016, the appraiser selected by Globalfoundries valued the equipment at $7.274 million. The purchase price was set at $4,810,250 because the Purchase Cap value was lesser than the Fair Market Value.

On January 12, 2016, Macquarie notified Globalfoundries that it was in default under the MLA because Globalfoundries had failed to remit payment to Macquarie. On January 20, 2016, Macquarie again contacted Globalfoundries and demanded return of the equipment and rent due, including a per diem payment for the rent payable through the end of January 2016 pursuant to Section 22(c) of the MLA. Globalfoundries paid the purchase price on February 17, 2016.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[1] All facts are viewed in the light most favorable to the non-moving party.[2] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[3] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[4] If the non-moving party bears the burden of proof at trial, yet "fails to make a

---

[1] Super. Ct. Civ. R. 56(c).
[2] *Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558, 560 (Del. Super. 1989).
[3] Super. Ct. Civ. R. 56(c).
[4] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

3

showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[5]

Where the parties have filed cross motions for summary judgment, and have not argued that there are genuine issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[6] Neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[7]

## ANALYSIS

The parties have agreed that the Court will not address liability for alleged breach of the MLA at this time. The only issue before the Court is the proper method to measure damages, should Globalfoundries be found in breach of the MLA on the basis of its failure to make timely payment of the purchase price.

### *Globalfoundries' Rent Obligations After Lease Term Purchase Date*

New York law applies in this case pursuant to the MLA. Under New York law, "[u]pon accepting an option to buy contained in a lease, the option becomes a binding contract to sale, and the tenant becomes a purchaser in possession."[8] When a tenant exercises an option to purchase, the lessor/lessee relationship

---

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6] Super. Ct. Civ. R. 56(h).

[7] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 744-45 (Del. 1997).

[8] *Sid Farber Hemstead Corp. v. Buckley*, 317 N.Y.S.2d 30, 32-33 (N.Y. Dist. Ct. 1970).

4

dissolves "absent an intent to the contrary . . . ."[9] The exercise of an option to purchase merges the landlord/tenant relationship into a vendor/vendee relationship.[10] This merger doctrine is well established in New York.[11]

Section 22(a) of the MLA establishes Globalfoundries' irrevocable option to purchase the equipment at the conclusion of the Lease Term. The first alternative is return of the equipment. If Globalfoundries fails to exercise the option to purchase the equipment, Section 22(c) of the MLA provides that Globalfoundries must return the equipment at the end of the Lease Term. If Globalfoundries fails to timely return the equipment, then the Lease Term is extended and additional rent must be paid.

The second alternative is purchase of the equipment. Section 22(d) of the MLA provides the Lease Term Purchase Option:

> Lessee shall have the option to purchase all (but not less than all) the Equipment on any date for the payment of rent during the Lease Term (the "Lease Term Purchase Option") and on the last day of the Lease Term (the "End Term Purchase Option"). If Lessee wishes to exercise the Lease Term Purchase Option, Lessee shall notify Lessor of its election to exercise the Lease Term Purchase Option, specifying the date on which it will purchase the Equipment (the "Lease Term

---

[9] *Koppelman v. Barrett*, 17 N.Y.S.3d 584, 585 (N.Y. App. Term 2015).

[10] *See Kaygreen Realty Co., LLC v. IG Second Generation Partners, L.P.*, 912 N.Y.S.2d 246, 251 (N.Y. App. Div. 2010) ("Generally, a tenant's exercise of an option to purchase contained in a lease merges the landlord/tenant relationship into the vendor/vendee relationship serving to terminate the landlord-tenant relationship unless the parties intend otherwise . . . .")

[11] *See, e.g., id.* (stating that generally, the exercise of an option to purchase merges the landlord/tenant relationship into the vendor/vendee relationship); *In re Merkel, Inc.*, 269 N.Y.S.2d 190, 191 (N.Y. App. Div. 1966) (finding that exercising an option to purchase transformed the leasing agreement to a conditional bill of sale).

Purchase Date") at least 60 days before the Lease Term Purchase Date and, once given, Lessee may not withdraw such notice without Lessor's consent. If Lessee wishes to exercise the End Term Purchase Option, Lessee shall notify Lessor as provided in Section 22(a) and, in the event Lessee exercises or is deemed to have exercised the End Term Purchase Option, the purchase date shall be the last day of the Lease Term. If the Lease Term Purchase Option is exercised, Lessee shall pay to Lessor on the Lease Term Purchase Date the Stipulated Loss Value for the Equipment determined as of the Lease Term Purchase Date. For the avoidance of doubt, the Stipulated Loss Value of any item of Equipment shall have no bearing or influence on the determination of the Fair Market Value determined pursuant to this Section 22. *If the End Term Purchase Option is exercised or deemed to have been exercised, Lessee shall continue the payments of rent through the Lease Term* and pay to Lessor on the last day of the Lease Term the lesser of the Fair Market Value (as determined pursuant to Section 22(f)) and the Purchase Cap. *Upon payment in full of the above amounts, Lessor shall transfer to Lessee the Equipment free from all Lessor Liens*, but otherwise on an "AS-IS, WHERE-IS" basis with all faults and without recourse and without any other representation or warranty of any kind, express or implied. [emphasis added]

Section 22(f) of the MLA outlines the appraisal procedure for the equipment.

Macquarie argues that the MLA demonstrates the parties' intent to continue in a lessor/lessee relationship. Macquarie contends the fact that Globalfoundries continued to make rental payments, after electing to purchase the equipment, evidences the intent to continue in a lessor/lessee relationship. Macquarie also argues that the Section 22(d) provision of the MLA, which provides that title to the equipment only transfers to Globalfoundries upon payment, demonstrates that the parties intended to continue their lessor/lessee relationship after the conclusion of the Lease Term. Macquarie also cites Section 25(f) of the MLA, which sets forth

6

that all obligations survive the end of the Lease Term, in support of its contention.

The Court finds Macquarie's argument unpersuasive. Here, the issue is the parties' intent regarding the nature of their relationship if the purchase price was not paid by December 31, 2015. The Court must decide whether the lessor/lessee relationship became a seller/purchaser relationship when the End Term Purchase Option was exercised. The Court must determine whether the parties intended that the two relationships exist simultaneously.

The express terms of the MLA do not indicate a clear intention of the parties that there be a co-existence of the two relationships. Pursuant to New York law, upon the exercise of the Lease Term Purchase Option, the parties formed a binding sale contract. The parties' relationship became that of a seller and purchaser in possession.

Had the parties clearly intended that rent continue in a circumstance where the purchase price was not timely paid, they could have included such a provision in Section 22(d) of the MLA, as they did in Section 22(c), which states: "If the Equipment is not returned on the date it is required to be returned, the Lease Term shall at Lessor's option be extended until the Equipment is so returned . . . ."

Therefore, the Court finds that Globalfoundries' duty to continue to pay rent on the equipment was terminated as of December 31, 2015 by Globalfoundries' exercise of the Lease Term Purchase Option.

7

### *Damages for Breach of Master Lease Agreement*

The parties reasonably contemplated that the Section 22(f) appraisal procedure in the MLA could be completed in time to enable payment of the purchase price by the Lease Term Purchase Date on December 31, 2015. Payment was not made until February 17, 2016.

Pursuant to Section 13(a) of the MLA, failure by the lessee "to pay any rent or other amount due under the Lease within 10 days of its due date" will constitute an "Event of Default." If Globalfoundries breached the MLA by failing to remit timely payment of the purchase price, then that failure would be an Event of Default. The Court's finding – that the parties' relationship converted to that of a seller and purchaser in possession – does not mean that the MLA itself was terminated. The Lease Term Purchase Option is still governed by the express terms of the MLA. Other relevant MLA terms remain valid and applicable.

Section 18 of the MLA addresses "Late Charges" payable by Globalfoundries to Macquarie:

> LATE CHARGES. If any rent or ***other amount payable under the Lease*** is not paid within 5 days of its due date, then as compensation for the administration and enforcement of Lessee's obligation to make timely payments, Lessee shall pay with respect to each overdue payment on demand, interest on the overdue amount until the same is paid at the Overdue Rate, plus any collection agency fees and expenses. The failure of Lessor or Transferee to collect the foregoing will not constitute a waiver of Lessor's right with respect thereto. [emphasis added]

8

Section 2 of the MLA, in part, defines "Lease" as the MLA.

The Court finds that an "other amount payable under the Lease" includes the purchase price. Therefore, Late Charges apply, including interest at the defined Overdue Rate of 12%.

Section 14 of MLA provides remedies available to the Lessor in an Event of Default. Section 14(e) allows Macquarie to collect "attorney fees" if an Event of Default exists.

If Globalfoundries is in breach of the MLA, Macquarie is entitled to attorneys' fees "attributable to [Globalfoundries'] actions" in the Event of Default. However, that does not mean Macquarie is entitled to all attorneys' fees involved in this litigation. The only fees Macquarie may recover are those expended in connection with prosecuting the issue of breach of the MLA. For purposes of Section 14(e), this issue does not include that portion of the litigation in which Macquarie seeks payment of holdover rent and repossession of the equipment.

By limiting Macquarie's damages for Globalfoundries' purported breach of the MLA to those attributable to its failure to make timely payment of the purchase price, Macquarie will be made whole. If the parties had contemplated rental payments during the time of delinquency, the MLA could have contained a provision, similar to that set forth in Section 22(c).

The Court further notes that the MLA does not provide a "time is of the essence" clause.

## CONCLUSION

The Court finds that Globalfoundries' duty to pay rent was terminated as of December 31, 2015. The parties' relationship shifted from that of a lessor and lessee to that of a seller and purchaser in possession upon Globalfoundries' exercise of the Lease Term Purchase Option.

The Court also finds that if Globalfoundries is determined to have breached the MLA, Macquarie is entitled to attorneys' fees attributable to Globalfoundries' actions in the Event of Default. The attorneys' fees shall be limited to those in connection with prosecuting the issue of breach of the MLA.

**THEREFORE,** Macquarie's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART.** Globalfoundries' Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED**

The Honorable Mary M. Johnston

10