# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

COEUR MINING, INC, and )
0986566 B.C., ULC, )
)
Plaintiffs, )
)
v. ) C.A. NO.: N18C-12-264 AML CCLD
)
COMPANIA MINERA PANGEA, )
S.A. DE C.V., )
)
Defendant. )

Submitted: July 8, 2019
Decided: August 22, 2019

## ORDER

### Defendant's Motion to Dismiss: Granted

1.      This dispute arises from Defendant's purchase of mineral rights from Plaintiffs' subsidiary. The purchase agreement required Defendant to pay the subsidiary cash at closing along with an additional payment two years later if the mine remained operational on that date. After Defendant purchased the mineral rights, but before the additional payment was due, Plaintiffs sold the subsidiary to another company. Plaintiffs contend they retained the right to the conditional payment when they sold the subsidiary.

2.      Plaintiffs filed this breach of contract action after Defendant refused to make the conditional payment. Defendant moved to dismiss Plaintiffs' claim, arguing that Plaintiffs, who were not parties to the agreement, have no right to

enforce the subsidiary's conditional payment right. Defendant further argues Plaintiffs cannot be the assignees of the subsidiary's right because the agreement contains an unambiguous anti-assignment clause. Plaintiffs advance various theories as to why their claim to the conditional payment did not constitute an "assignment" or did not violate the anti-assignment clause, and offer several strained interpretations of the agreement to support their theories. For the reasons that follow, I conclude Plaintiffs do not have a right to the conditional payment by virtue of their former ownership of the subsidiary, and any assignment of the conditional payment by the subsidiary is void under the purchase agreement's anti-assignment clause. Plaintiffs therefore lack standing to enforce the conditional payment, and Defendant's motion to dismiss is granted.

**BACKGROUND**

3. The following facts are drawn from the complaint and the documents incorporated by reference therein. In 2016, Defendant Compania Minera Pangea, S.A. DE C.V. ("CMP") purchased certain mineral rights in the El Gallo Mine from non-party 1570926 Alberta Ltd. ("Alberta"). CMP and Alberta executed an Assignment and Assumption Agreement (the "Agreement") on April 13, 2016. At the time of the transaction, Plaintiff Coeur Mining, Inc. ("Coeur") owned all Alberta's stock through Coeur's subsidiary, Plaintiff 0986566 B.C., ULC ("BC ULC") (collectively with Coeur, "Plaintiffs").

2

4.     As consideration for the sale, CMP paid Alberta $5.25 million in cash at closing. Under Section 2.6 of the Agreement, an additional $1 million payment (the "Conditional Payment") was due on June 30, 2018 if the El Gallo mine continued to operate on that date. The agreement specified that "operation" would not include "activities solely pertaining to reclamation of the mine or exploration."[1]

5.     Article VI of the Agreement contains several "General Provisions," including an anti-assignment clause (the "Anti-Assignment Clause") prohibiting Alberta from assigning its rights to any other party without CMP's consent. That clause specifically provides:

> Neither this Agreement nor any of the rights, interests or obligations under this Agreement may be assigned or delegated, in whole or in part, by operation of law or otherwise, by [Alberta] without the prior written consent of each other party, and any such assignment without such prior written consent shall be null and void.[2]

Article VI also includes a non-survival clause (the "Non-Survival Clause") providing that the representations, warranties, and covenants in the Agreement terminate at closing, except for "any covenant or agreement of the parties that by its terms requires performance after the [c]losing."[3]

6.     In 2017, Coeur and BC ULC sold 100% of their Alberta shares to non-party Metalla Royalty & Streaming Ltd. ("Metalla"). The parties executed a

---

[1] Def.'s Opening Br. Ex. 1 § 2.6 [hereinafter "Agreement"].

[2] Agreement § 6.12.

[3] *Id.* § 6.1.

Share and Asset Purchase Agreement (the "SAPA") on June 9, 2017. Plaintiffs allege that under Section 5.14(a) of the SAPA, they retained the right to the Conditional Payment.[4] Section 5.14(a) states:

> Any payments pursuant to the Subject Agreements, including any interest thereon, that are received by [Metalla or Alberta] that relate to the Pre-Closing Period . . . shall be for the account of [Coeur, BC ULC, and other sellers], and, if applicable, [Metalla or Alberta] shall pay over to [Coeur, BC ULC, and other sellers] such payments within five Business Days after receipt thereof.[5]

7. On June 18, 2018, Metalla contacted CMP and requested that CMP wire the Conditional Payment to BC ULC. CMP responded that it would not be making the Conditional Payment because the El Gallo Mine had ceased operations on May 31, 2018. In the months following, Plaintiffs made several more demands for payment, all of which CMP rebuffed. Coeur then filed this breach of contract action against CMP. On March 21, 2019, Coeur filed an amended complaint (the "Amended Complaint") adding BC ULC as a plaintiff. CMP moved to dismiss the Amended Complaint under Superior Court Civil Rule 12(b)(6), and the parties briefed and argued that motion.[6]

---

[4] *See* Def's Opening Br. Ex. 2 § 5.14(a) [hereinafter "SAPA"]. The Court assumes for purposes of this decision that Plaintiffs in fact have a right to receive the Conditional Payment under the SAPA. That is pleaded in the Amended Complaint, but is less than clear in the language of Section 5.14(a) and the definition of "Subject Agreements" in the SAPA, which does not expressly refer to the Agreement.

[5] SAPA § 5.14(a).

[6] Defendant also argues the Amended Complaint should be dismissed for failure to join an indispensable party under Superior Court Civil Rules 12(b)(7) and 19, but the Court need not reach this issue because dismissal is appropriate under Rule 12(b)(6).

## THE PARTIES' CONTENTIONS

8. In its motion to dismiss, CMP argues Plaintiffs lack standing to sue for breach of contract because neither plaintiff is a party to the Agreement or an assignee of Alberta's right to the Conditional Payment. CMP contends Plaintiffs never enjoyed a right to the Conditional Payment solely through their ownership of Alberta, and they cannot be the assignees of Alberta's right because the Agreement contains an unambiguous Anti-Assignment Clause.

9. In response, Plaintiffs contend their right to the Conditional Payment arises from the SAPA. Plaintiffs argue that under the SAPA, BC ULC retained Alberta's right to the Conditional Payment when it sold all Alberta's stock. Plaintiffs contend CMP's reliance on the Anti-Assignment Clause is misplaced because Alberta did not "assign" its rights in the Conditional Payment to BC ULC, rather, BC ULC "retained" the rights it already had as Alberta's owner. Alternatively, Plaintiffs argue that even if the SAPA constituted an assignment, the Anti-Assignment Clause does not apply to the Conditional Payment. According to Plaintiffs, interpreting the Anti-Assignment Clause to apply to the Conditional Payment would lead to absurd results because CMP would have an unfettered veto right over what Alberta does with its own assets. Plaintiffs also contend that under the Non-Survival Clause, the Anti-Assignment Clause did not survive the closing

5

and therefore did not limit Alberta's ability to assign its right to the Conditional Payment.

**ANALYSIS**

10.     On a motion to dismiss, the Court must determine whether the "plaintiff 'may recover under any reasonably conceivable set of circumstances susceptible of proof.'"[7] "If [the plaintiff] may recover, the motion must be denied."[8] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[9] When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations.[10] In addition, "a trial court must draw all reasonable factual inferences in favor of the party opposing the motion."[11]

---

[7] *Holmes v. D'Elia*, 2015 WL 8480150, at *2 (Del. Dec. 8, 2015) (quoting *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[8] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).

[9] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).

[10] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[11] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).

### A. Any right Plaintiffs have to the Conditional Payment is through assignment.

11. CMP contends the only party with the right to enforce the Conditional Payment is Alberta, but Plaintiffs argue Alberta has no claim to the Conditional Payment because Plaintiffs retained the right to the payment when they sold 100% of their Alberta shares to Metalla. Plaintiffs describe this arrangement as a "retention of rights" rather than an "assignment." Plaintiffs, however, conceded at oral argument that they had no legal authority to support either their "retention of rights" theory or the idea that a corporation's shareholder has a right to an obligation owed to that corporation.

12. Plaintiffs' argument that BC ULC had a right to the Conditional Payment through BC ULC's ownership of Alberta's stock is contrary to Delaware law, which respects the corporate form. Under Delaware law, a corporation is a distinct entity, and its rights and obligations are its own, not its stockholders.[12] BC ULC was not a party to the Agreement and never had a right to the Conditional Payment because that right always rested solely with Alberta. The only way BC ULC could have obtained Alberta's right to the Conditional Payment was through assignment.

---

[12] *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87 (Del. 1959) ("The corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation."). *See also Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006).

## B. The plain language of the Anti-Assignment Clause bars assignment, and that clause survives closing.

13.    Plaintiffs conceded at oral argument that the Anti-Assignment Clause, by its plain language, would bar assignment of the Conditional Payment without CMP consenting to the assignment. The parties do not dispute that CMP never consented to the assignment of Alberta's rights to BC ULC. Plaintiffs, however, offer several reasons why the Anti-Assignment Clause does not apply to the Conditional Payment.

14.    Plaintiffs first argue a plain reading of the Anti-Assignment Clause is absurd, because CMP should not possess a veto right over what Alberta does with its own assets. The parties, however, were free to draft a clause that excluded the Conditional Payment from the Anti-Assignment Clause, but failed to do so. The Court may not add limitations to the Agreement for which the parties did not bargain.[13] Moreover, applying the Anti-Assignment Clause's plain language does not lead to an absurd result. Rather, it was reasonable for the parties to limit who could enforce the Agreement's rights and obligations because interpretation of those rights and obligations could depend on the parties' mutual understanding during the Agreement's negotiation. This is as true of the Conditional Payment obligation as it is of the Agreement's other rights and obligations. In particular,

---

[13] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 746 (Del. 1997) ("Contract interpretation that adds a limitation not found in the plain language of the contract is untenable.").

8

the parties' understanding of the meaning of "operation" of the El Gallo mine could vary as new assignees were introduced to the Agreement. Understandably, both parties would want to protect themselves from potential litigation with a proposed assignee who was not present at drafting and who might adopt an interpretation inconsistent with the contracting parties' intent.

15. Plaintiffs also argue the Anti-Assignment Clause does not apply because its effect did not continue after closing per the Non-Survival Clause. The Non-Survival Clause provides that "the representations, warranties and covenants . . . contained in [the Agreement] . . . shall terminate at, and not survive, the [c]losing" except for "any covenant or agreement of the parties that by its terms requires performance after the [c]losing."[14]

16. Plaintiffs have offered two interpretations of the Non-Survival Clause to support their position that the Anti-Assignment Clause does not apply after closing. Plaintiffs argued in their answering brief that the Conditional Payment itself did not require any "performance" after closing, and Alberta therefore was free to assign its payment right to BC ULC. Plaintiffs describe CMP's obligation as "completing payment" or "effectuating an installment payment," which they contend is not performance. At oral argument, Plaintiffs also argued the Anti-Assignment Clause did not survive the closing because the Conditional Payment

---

[14] Agreement § 6.1.

9

did not require *Alberta's* performance, so Alberta was permitted to assign its right to BC ULC.

17.    Neither of Plaintiffs' arguments are persuasive or consistent with the Agreement's plain language. First, the Conditional Payment manifestly involves "performance" after the April 19, 2016 closing date. CMP promised in Section 2.6 of the Agreement to pay $1 million to Alberta on or before June 30, 2018 if certain conditions of the mining operations were met. Section 2.6 is an agreement to perform after closing. There is no other reasonable way to interpret that provision. CMP's argument that survival depends on *who* must perform also lacks merit. The exception to the Non-Survival Clause does not limit survival based on which party must perform, but simply applies to a covenant or agreement requiring performance after closing.

18.    In any event, the Anti-Assignment Clause survived closing because that clause is not a representation, warranty, or covenant. Plaintiffs' understanding of the Non-Survival Clause is that the "provisions" of the Agreement terminate at closing,[15] but the clause actually states that the "representations, warranties, and covenants" in the Agreement terminate at closing.[16] By Plaintiffs' interpretation, all clauses in the Agreement, including the other "General Provisions" in Article VI relating to notice, limitations on damages, and choice of law, would expire at

---

[15] Pls.' Answering Br. at 12-13.
[16] Agreement § 6.1.

10

closing. Those provisions would be rendered meaningless if they did not survive the closing, because they generally only are relevant when a post-closing dispute arises. In keeping with its obligation to give "reasonable, lawful, and effective meaning" to all the Agreement's terms, the Court must conclude the Non-Survival Clause only applies to the representations, warranties, and covenants in the Agreement, which does not include the Anti-Assignment Clause.[17]

19. For those reasons, the Anti-Assignment Clause survives the closing and applies to the Conditional Payment. Accordingly, any assignment by Alberta was void under the Anti-Assignment Clause, and Plaintiffs have no right to the Conditional Payment or standing to sue for breach of contract.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:   R. Montgomery Donaldson, Esquire
       Christina M. Belitz, Esquire
       Peter L. Frattarelli, Esquire
       S. Alexander Faris, Esquire

---

[17] *Segovia*, 2008 WL 2251218, at *9.

11