# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| Food & Water Watch, | ) |
| | ) |
| Appellant, | ) |
| | ) C.A. No. N19A-04-006 FWW |
| v. | ) |
| | ) |
| Delaware Department of Natural | ) |
| Resources and Environmental Control, | ) |
| | ) |
| Appellee. | ) |

Submitted: August 30, 2019
Decided: November 27, 2019

*Upon Appellant Food & Water Watch's Motion for Summary Judgment*
**DENIED**

*Upon Appellee Delaware Department of Natural Resources and Environmental Control's Motion for Summary Judgment*
**GRANTED**

## ORDER

Kenneth T. Kristl, Esquire, Environmental & Natural Resources Law Clinic, Widener University Delaware Law School, 4601 Concord Pike, Wilmington, DE 19803, Attorney for Appellant Food & Water Watch.

William J. Kassab, Esquire, Deputy Attorney General, 391 Lukens Drive, New Castle, DE 19720, Attorney for Appellee Delaware Department of Natural Resources and Environmental Control.

**WHARTON, J.**

This 27th day of November, 2019, upon consideration of the parties' Cross Motions for Summary Judgment and their corresponding responses, it appears to the Court that:

1. On October 28, 2015, Appellee, the Delaware Department of Natural Resources and Environmental Control ("DNREC") published public notice of a draft National Pollutant Discharge Elimination System ("NPDES") General Permit ("General Permit") for large, medium, and designated poultry Concentrated Animal Feeding Operations ("CAFOs"). After an extensive hearing and comment process, the General Permit became effective on April 1, 2016. On April 6, 2016, DNREC posted public notice for the final General Permit.

2. Appellant, Food & Water Watch ("F&WW"), filed an appeal with the Environmental Appeals Board on April 22, 2016, which the Board dismissed on standing grounds. This Court reversed and remanded the appeal to the Board. Pursuant to 7 *Del. C.* § 6008(g), the parties stipulated to appeal to this Court and have filed cross motions for summary judgment on the merits.

3. In its Motion for Summary Judgment, F&WW challenges the General Permit, claiming it fails to require that CAFOs monitor effluent discharge in surface waters to ensure compliance with the General Permit's zero discharge requirement.[1] In F&WW's view, the General Permit is contrary to law because: (1) the lack of

---

[1] F&WW's Mot. Summ. J., D.I. 6.

monitoring is contrary to the Federal Clean Water Act ("CWA") and the regulations issued pursuant to it; (2) the General Permit is contrary to Delaware regulations; and (3) the "Zero Discharge" requirement does not excuse the failure to require discharge monitoring requirements.[2]

4.    In opposition to F&WW's Motion for Summary Judgment, DNREC contends that the General Permit is compliant under both the CWA and Delaware law since neither the Federal, nor Delaware NPDES regulations require that the General Permit include a surface water monitoring requirement.[3]  Additionally, DNREC argues that the General Permit's monitoring, recordkeeping and reporting requirements assure compliance with the permit's effluent limitations.[4]

5.    DNREC seeks summary judgment on all of the issues raised by F&WW's summary judgment motion.[5]  Additionally, it seeks summary judgment on the issue of ventilation discharges from CAFO production facilities.[6]  F&WW did not seek summary judgment on that issue.  DNREC maintains it is entitled to summary judgment because there is no issue of material fact and the General Permit is compliant with federal law and Delaware law since it includes measures to prevent

---

[2] *Id.*
[3] DNREC's Ans. Br. Opp. to Appellant's Mot. Summ. J., D.I. 9.
[4] *Id.*
[5] DNREC's Mot. Summ. J., D.I. 7.
[6] *Id.*

3

all Production Area discharges of manure, litter, and process wastewater.[7] Moreover, DNREC claims that the Environmental Protection Agency ("EPA") also found that the General Permit adequately addresses those discharges.[8] F&WW argues in opposition that the General Permit fails to regulate discharges of pollutants including litter, dust, feathers, and ammonia from the ventilated poultry confinement houses as required by the CWA and Delaware CAFO regulations.[9]

6. Superior Court Civil Rule 56(c) provides that summary judgment is appropriate when "there is no genuine issue of material fact...and the moving party is entitled to judgment as a matter of law."[10] The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact for resolution by the ultimate fact-finder.[11] Summary judgment will be appropriate only when, upon viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact.[12] Superior Court Civil Rule 56(h) provides:

---

[7] *Id.*

[8] *Id.*

[9] F&WW's Mem. Opp. DNREC's Mot. Summ. J., D.I. 8.

[10] Del. Super. Ct. Civ. R. 56(c).

[11] *Connolly v. Theta Chi Fraternity, Inc.*, 2018 WL 1137587, at *3 (Del. Super.), *aff'd sub nom. Connolly v. Alpha Epsilon Phi Sorority*, 198 A.3d 179 (Del. 2018), *reargument denied* (Dec. 17, 2018).

[12] *Id.*

> Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.[13]

Thus, if the Court finds that there are no genuine issues of material fact, it will grant summary judgment in favor of one party.[14]

7. In *Food & Water Watch v. Maryland Department of the Environment*,[15] F&WW sued the Maryland Department of the Environment ("MDE"), alleging that the MDE's General Discharge Permit for CAFOs, "neither provided for chemical, biological, and physical monitoring at any outfall or in-stream locations, nor required effluent monitoring, pursuant to 40 C.F.R. § 122.44 and the Clean water Act."[16] The monitoring issue in the case F&WW brought in Maryland is identical, or nearly so, to the claim it advances here. The parties dispute whether this Court properly may consider the Maryland decision since it is

---

[13] Del. Super. Ct. Civ. R. 56(h).

[14] *See Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 744–45 (Del. 1997). The Court notes that neither party address what, if any, deference, it should give to DNREC in applying the relevant statutes and regulations. *See 7 Del. C. §* 6008(g). In light of its ruling here, the Court does not address that question either.

[15] 2018 WL 2203175 (Md. Ct. Spec. App May 14, 2018), *cert. denied sub nom. Food & Water Watch & Assateague Coastal Tr. v. dep't of the Env't*, 460 Md. 502, 190 A.3d 1041 (2018).

[16] *Id.* at *1.

unreported.[17] F&WW notes that unreported decisions of the Maryland Court of Special Appeals are neither precedent within the rule of *stare decisis,* nor persuasive authority in Maryland.[18] There the both the Court of Appeals (Maryland's highest court) and the Court of Special Appeals (Maryland's intermediate appellate court) designate for publication only those opinions that are of substantial interest as precedents.[19] DNREC, on the other hand, points out that Delaware does not share Maryland's restrictive approach to unreported decisions.[20] In deciding cases, Delaware courts have cited any number of sources when undertaking to resolve cases, including, but far from limited to, unreported decisions, statutes and rules of other jurisdictions, books, reports, articles (including newspaper and magazine articles), legislative materials, administrative and executive materials, and a wide variety of internet and electronic sources. The distinction between reported and

---

[17] F&WW does not address the Maryland case in its summary judgment motion. It does address it twice elsewhere, however - first in response to DNREC's motion, but then only to tell this Court it should not consider it, and second, summarily, in its Reply Brief in Support of its Motion for Summary Judgment. D.I. 8 at 7-8, D.I. 12 at 5. It does not discuss the case substantively. F&WW apparently is of the view that this Court should be ignorant of the fact that it initiated litigation challenging a General Permit issued by Maryland on virtually identical grounds that it challenges the General Permit here. It appears that F&WW is also of the view that this Court should remain ignorant of the fact that a three judge panel of Maryland's Court of Special Appeals issued a detailed opinion affirming a Maryland Circuit Court, which had held against F&WW. This Court does not share F&WW's views.

[18] MD Rules, Rule 1-104(a).

[19] *Id.,* Rule 8-605.1.

[20] DNREC's Rep. Br. Opp. Appellant's Mot. Summ. J. at 12, *citing* Super. Ct. Civ. R. 107(g), D.I. 11. *See also,* Delaware Supreme Court Rule 14(g)(ii).

6

unreported decisions seems to be a vestige of a time when unreported decisions were not widely available to lawyers, and reported decisions were found exclusively in hardback reporter series. Now, all decisions, whether designated for publication or not, are readily and rapidly accessible to everyone through internet reporting services. Given that change in the legal publishing landscape, the Court can fathom no reason why it should not entertain the considered opinion of Maryland's Court of Special Appeals addressing the very issue raised by F&WW both in Maryland and here.

8.      It is clear to the Court that the CWA does not require surface water monitoring on zero discharge permits. F&WW attempted the same challenge to a MDE NPDES General Permit regulating CAFOs, relying on some of the same case law it relies upon here.[21] The Maryland Court of Special Appeals combed through the CWA meticulously, analyzed the case law carefully, and determined that the CWA foresees situations where a state may promulgate Best Management Practices ("BMPs") in the place of numeric Effluent Limitation Guidelines ("ELGs").[22] Thus, when F&WW argued that there must be strict adherence to the EPA's guidelines in Maryland—as it does here—the court disagreed, holding that the EPA affords states

---

[21] *See* F&WW's Mot. Summ. J. *citing Natural Res. Defense Council v. EPA*, 808 F.3d 556 (2d Cir. 2015); *Natural Res. Defense Council v. Los Angeles Cnty Dep't of Pub. Works*, 575 F. 3d 1194 (9th Cir. 1989), D.I. 6.
[22] *Food & Water Watch*, 2018 WL 2203175 at *10.

great flexibility in developing effluent limitations in meeting the CWA standard.[23] This Court has carefully considered the parties' submissions as well *Food & Water Watch v. Maryland Department of the Environment.* The Court sees no need to traverse the same ground trod in Maryland and agrees with the Maryland Court of Special Appeals.

9. The 2016 letter from the EPA to DNREC also supports DNREC's position. In its letter the EPA addresses whether the CWA requires CAFOs to monitor surface water stating: "[a]lthough States may require in-stream monitoring as an element of an NPDES permit, the CWA does not require that they do so."[24] . According to the 2016 EPA letter, DNREC and the EPA worked closely to draft the General Permit and its final submitted version left "no concerns that needed to be resolved."[25]

10. F&WW asserts that the General Permit violates Delaware Regulations. The Court disagrees. The Delaware Regulations incorporate by reference the federal law and add no additional monitoring requirements.[26]

11. The last remaining issue is DNREC's argument that it is entitled to summary judgment on F&WW's claim that the general permit is defective because

---

[23] *Id.* at *11 (*citing* 40 C.F.R. § 122.44(d)(1)(vii)(B)).
[24] App. to DNREC Opening Br. at 206.
[25] *Id.*
[26] 7 Del. C. §7201 *et. Seq.*

it "fails to regulate discharge of pollutants, including litter, dust, feathers, and ammonia from ventilated poultry houses as required by the CWA and Section 7201-9.5.6.4.1.1 of the Delaware CAFO Regulations."[27] F&WW acknowledges that it raised this issue in its Statement of Appeal but does not seek summary judgment on it now.[28] F&WW explains that it elects to forego summary judgment on this issue in order to focus on what it considers its main argument – the lack of required monitoring in the General Permit.[29] Attached to the Notice of Appeal was a Proposed Order for a Joint Stipulation and Proposed Briefing Schedule, which the Court entered on April 22, 2019.[30] In the Order, the parties stipulated that they "agree that the issues in this appeal are solely questions of law that can be resolved on cross-motions for summary judgment."[31] Nonetheless, F&WW opposes DNREC's summary judgment motion on this issue. To the extent its opposition is predicated on an assertion that genuine issues of material fact exist, it is estopped by its stipulation from making that assertion. Further, the Court finds that F&WW, having: (1) agreed to seek a final resolution of its challenge to the Secretary's Order No. 2016-W-008; (2) agreed that the issues on appeal are solely questions of law and can be resolved by cross-motions for summary judgment: and (3) having failed to

---

[27] DNREC Mot. Summ. J. at 26, D.I. 7.
[28] Appellant's Resp. DNREC's Mot. Summ. J. at 11-12, D.I. 8.
[29] *Id.*
[30] D.I. 4.
[31] *Id.*

9

seek summary judgment on the issue of regulating discharges from ventilated poultry houses, has waived that issue in this appeal.

12. Even if F&WW did not waive this issue on appeal, DNREC is entitled to summary judgment because the General Permit includes measures to prevent all Production Area discharges of manure, litter, and process wastewater from ventilated poultry confinement houses in accordance with both federal and Delaware CAFO standards. F&WW's arguments related to ammonia are misplaced since ammonia gas emissions are not regulated through the CWA. The EPA makes that point clear in its letter, stating the CWA does not require states to regulate ammonia emissions from CAFOs as a part of its NPDES permit process, because the CWA does not address air emissions. Those emissions are controlled by the Clean Air Act, which has not been invoked here.

13. Accordingly, the Court finds that there are no genuine issues of material fact and that DNREC is entitled to summary judgment as a matter of law.

**THEREFORE,** Appellant Food & Water Watch's Motion for Summary Judgment is **DENIED.** Appellee Delaware Department of Natural Resources and Environmental Control's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Ferris W. Wharton, J.

10