Kylie A. SHUBA and Michael D., Shuba, Plaintiffs Below–Appellants,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign corporation, Defendant Below–Appellee.

No. 160, 2013.

Supreme Court of Delaware.

Submitted: Aug. 21, 2013.
Decided: Oct. 3, 2013.

I. Barry Guerke, Esquire, of Parkowski, Guerke & Swayze, Dover, Delaware, for Appellants.

Stephen P. Casarino, Esquire, and Rachel D. Allen, Esquire, of Casarino, Christman, Shalk, Ransom & Doss, P.A., of Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

RIDGELY, Justice:

In this dispute over underinsured motorist ("UIM") benefits, Plaintiffs-below Kylie A. Shuba and Michael D. Shuba (collectively, the "Shubas"), appeal from the Superior Court denial of their cross-motion for summary judgment and its grant of the Defendant–Below, the United Services Automobile Association's ("USAA"), motion for summary judgment. The Shuba's seek to be covered persons for the wrongful death of their mother under an insurance policy issued by USAA and held by the Shubas' step-mother. It is undisputed that their mother, Linda Ann Banning (the "Decedent"), was not a named insured under the policy or a resident of the step-mother's household as the Shubas were. The Shubas claim the trial court erred in finding the Shubas could not recover under the USAA policy. In making their claim, the Shubas ask us to overrule two Superior Court cases, *Temple v. Travelers Indemnity Co.*[1] and *Adams–Baez v. General Accident Co.*,[2] the former of which we affirmed on the basis of the trial court opinion.[3] We decline to overrule the *Temple/Adams–Baez* precedent, and affirm the judgment of the Superior Court.

### Background

In July 2002, the Decedent was killed in an automobile accident in Kent County, Delaware. Her car was struck by another car owned by Daniel V. Gatto. The Decedent's son, Michael Shuba, was in the car with his mother at the time of the accident and was injured. The Decedent's daughter, Kylie Shuba, was not present at the time of the accident.

1. 2000 WL 33113814 (Del.Super. Ct. Nov. 30, 2000).

2. 2005 WL 2436220 (Del.Super. Ct. Sept. 30, 2005).

3. *Temple v. Travellers* [sic] *Indemnity Co.*, 782 A.2d 267, 2001 WL 760864, at *1 (Del. June 14, 2001).

In January 2005, the Shubas and Gatto engaged in binding arbitration to determine an award for the wrongful death of the Decedent. Michael was awarded $791,000 for the wrongful death and $7,000 for his personal injuries. Kylie was awarded $648,000 for the wrongful death. USAA was not party to the arbitration. Gatto's automobile insurance carrier paid out its combined single bodily injury coverage policy limits of $100,000 to both Michael and Kylie, exhausting that policy's coverage. Gatto's automobile insurance carrier then executed a release expressly preserving any underinsured motorist ("UIM") claims. The Decedent's automobile insurance carrier paid out its UIM coverage policy limits of $300,000 to both Michael and Kylie, exhausting that policy's coverage. The Decedent's automobile insurance carrier then executed a release expressly preserving any further UIM claims.

At the time of the accident Michael and Kylie's step-mother, Gloria Shuba ("Gloria"), held an automobile insurance policy with USAA (the "Policy"). The Policy provides UIM coverage in the amount of $300,000 per person/$500,000 per accident. The Decedent was not a named insured or a resident of Gloria's household. The Decedent and Duane Shuba (the Decedent's ex-husband and Gloria's husband), shared joint custody of Michael and Kylie.

In March 2009 the Shubas filed a complaint in the Superior Court against USAA demanding that USAA pay compensation to the Shubas under Gloria's policy. USAA filed a motion for summary judgment, to which the Shubas responded by filing a cross-motion for summary judgment. The Superior Court granted USAA's motion for summary judgment and denied the Shubas' crossmotion for summary judgment.[4] This appeal followed.

### Discussion

We review the Superior Court's denial or grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[5] "When opposing parties make cross motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law."[6] The interpretation of insurance contracts involves questions of law that are reviewed *de novo*.[7]

The Shubas' claim centers on Gloria's USAA Policy and its compliance with 18 *Del. C.* § 3902(b). The Policy provides in relevant part:

B. **Covered person** as used in this Part means:

1. You or any family member.

2. Any other person occupying your **covered auto.**

3. Any person for damages that person is entitled to recover because of **BI** [bodily injury] to which this coverage applies sustained by a person described in 1. or 2. above.

. . .

---

4. *Shuba v. USAA*, 2010 WL 8250754, at *3–4 (Del.Super.Ct. May 14, 2010).

5. *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 456 (Del.2010) (quoting *Brown v. United Water Delaware, Inc.*, 3 A.3d 272, 275 (Del.2010)).

6. *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del.1997) (citing *Playtex FP, Inc. v. Columbia Cas. Co.*, 622 A.2d 1074, 1076 (Del.Super.1992)).

7. *Id.* at 744–45 (citation omitted).

We will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of:

> 1. An **uninsured** or **underinsured motor vehicle** because of [bodily injury] sustained by a **covered person** and caused by an auto accident.[8]

Under Delaware law, the "scope of an insurance policy's coverage obligation is prescribed by the language of the policy."[9] "[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning...."[10] When the language of an insurance contract is ambiguous, it "is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted."[11]

■ Title 18, Section 3902(b) of the Delaware Code provides in relevant part:

> Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death ... [s]uch additional insurance shall include underinsured bodily injury liability coverage.
>
> (1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his/her legal representative are legally entitled to recover from the driver of an underinsured motor vehicle.[12]

"Insurance policy provisions designed to reduce or limit the coverage to less than that prescribed by the Delaware statute, 18 *Del. C.* § 3902, are void."[13]

■ In *Temple v. Travelers Indemnity Co.* the Superior Court found:

> [A] fair reading of 18 *Del. C.* § 3902(b) limits recovery to bodily injuries suffered by the policy's insured or if those injuries had led to the death of the insured, those benefits may flow to his/her legal representative. It does not allow coverage for injuries sustained by non-insured individuals regardless of their relationship to the policyholder. Further, since the Court finds that the language found in Travelers' policy is consistent with 18 *Del. C.* § 3902(b), the Court rejects the Plaintiffs' argument that the policy inappropriately limits coverage or is in any way void as against public policy.[14]

On appeal, this Court agreed with the above reasoning and affirmed on the basis of the Superior Court's written decision.[15] In *Adams–Baez v. General Accident Co.,* the Superior Court applied the *Temple* reasoning, finding that "a wrongful death plaintiff ... files a cause of action as if he stands in the shoes of the Decedent."[16] Accordingly, if coverage under an insurance policy would not be available to the Decedent, it is not available to the wrongful death plaintiff.

---

8. Appendix to Appellant's Opening Br. at A51–52 (emphasis added).

9. *Emmons,* 697 A.2d 742, 745 (Del.1997) (quoting *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195–96 (Del.1992)).

10. *Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d 925, 926 (Del.1982).

11. *Id.*

12. 18 *Del. C.* § 3902(b).

13. *Frank v. Horizon Assur. Co.,* 553 A.2d 1199, 1201–02 (Del.1989) (citing *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d 670, 673 (Del.1978)).

14. *Temple,* 2000 WL 33113814, at *6.

15. *Temple,* 782 A.2d 267, 2001 WL 760864, at *1.

16. *Adams–Baez,* 2005 WL 2436220, at *3.

The disposition of this case turns on the application of *Temple* and *Adams–Baez,* which the Shubas ask us to overrule.[17] "It is well-established ... that once an issue of law has been settled by a decision of this Court, 'it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside ... and [it] should be followed except for urgent reasons and upon clear manifestation of error.' "[18]

The Shubas first argue that the "stand in the shoes of the decedent" rule utilized in *Temple* and *Adams–Baez* improperly focuses on whether the decedent was covered by the policy instead of whether the party making the claim was covered by the policy. The Shubas argue that this approach is contrary to the legislative intent and public policy of Section 3902(b) to protect innocent persons from uninsured or judgment proof tortfeasors. The Shubas also argue that *Temple* and *Adams–Baez* impermissibly expand Section 3902(b), since the statute has no express requirement that the *insured* suffer bodily injury, but rather only requires some bodily injury occur.

We have held that § 3902(b) "permits a claim for UIM benefits where an operator of an underinsured motor vehicle causes the *claimant* bodily injury."[19] "Thus, the claimant must be able to show that she was injured by an underinsured vehicle within the meaning of the statute to collect on her UIM policy."[20] Section 3902(b) UIM insurance requirements protect the insured under a policy but do not require UIM coverage for the bodily injury or wrongful death of an individual who was not insured.

The holdings in *Temple* and *Adams–Baez* are consistent with the majority of states that have reviewed similar claims and reached the same conclusion.[21] As the South Dakota Supreme Court has explained, "the purpose of UM/UIM coverage is to protect the *insured* party *who is injured* in an automobile accident by the negligence of an uninsured/underinsured motorist"[22] Even in light of the statutory policy of protecting innocent persons insured for bodily injury or death, the court recognized that "the Legislature intended to mandate coverage for the protection of the *insured* for the *insured's bodily injuries or death* caused by the negligence of an uninsured/underinsured motorist."[23]

The Colorado Court of Appeals found that limiting UIM benefits only to bodily injury or death sustained by an insured did not violate Colorado's statutory mandate of UIM coverage and was consistent with public policy.[24] Specifically, the court explained:

> Reading the UIM provision as broadly as plaintiffs suggest would, contrary to common sense, allow recovery of UIM benefits for the death of an individual who was not insured under claimant's insurance policy, who did not reside in

---

17.  Appellant's Amended Opening Br. at 28.

18.  *White v. Liberty Ins. Corp.,* 975 A.2d 786, 790–91 (Del.2009) (alteration in original) (omission in original) (quoting *Account v. Hilton Hotels Corp.,* 780 A.2d 245, 248 (Del. 2001)).

19.  *White,* 975 A.2d at 788.

20.  *Id.* at 789.

21.  *See Eaquinta v. Allstate Ins. Co.,* 125 P.3d 901, 904 n. 5 (Utah 2005) (recognizing that a majority of courts hold that UIM benefits for wrongful death are not available for a non-insured decedent).

22.  *Gloe v. Iowa Mut. Ins. Co.,* 694 N.W.2d 238, 245 (S.D.2005) (emphasis in original).

23.  *Id.* (emphasis in original).

24.  *Jones v. AIU Ins. Co.,* 51 P.3d 1044, 1044 (Colo.App.2001).

claimant's household, and who, if he or she had survived, would not have had any right of recovery under claimant's policy.[25]

In *Allstate Ins. Co. v. Hammonds*, the Washington Supreme Court also held that neither the state's UIM statute nor public policy required an UIM insurer to cover a loss of consortium claim premised on the death of a party not covered by the policy.[26] The court explained that the insurer "would face a greatly increased risk if [the plaintiff's] interpretation prevailed, a risk not factored into the cost of the policy premium."[27]

█ We recognize that a minority of states have found that a party may recover under his or her own UM/UIM policy for a loss or injury to a third party. In *Gordon v. Atlanta Casualty Co.*, the Supreme Court of Georgia held that a Georgia statute required that an insurer pay damages to an insured father for the death of his son even when the insured's son was not a "covered person" under the insurance policy.[28] Because the father was entitled to recover damages in his claim against the uninsured motorist and because the statutes required that an insurer pay "all sums" recoverable from an uninsured motorist, the court found that the claim was covered.[29] But following *Gordon*, the Georgia General Assembly amended the statute "to eliminate the former require-ment that uninsured motorist coverage be provided for 'all sums' recoverable as damages by the insured against the tortfeasor."[30] Georgia law now requires that recovery is only available for injuries or death of an insured party on the policy.[31]

We agree with the majority rule. The *Temple* and *Adams–Baez* cases are consistent with a plain reading of § 3902(b) and appropriately require the decedent to be insured in order for a wrongful death plaintiff to collect on a UIM policy. The Shubas have not demonstrated urgent reasons or shown a clear manifestation of error to justify overruling this long-standing precedent.

█ As we do not overrule *Temple* and *Adams–Baez*, we now turn to the application of our precedent to the Shubas' case. The trial court found:

Here, the Decedent was not covered by the Policy. It was never contemplated by any party that the *Decedent* would be covered by *Gloria's* policy. Consequently, neither Michael nor Kylie may recover under Gloria's policy for the wrongful death of their mother, the Decedent.[32]

Because the Decedent was not insured under Gloria's insurance policy, Michael and Kylie do not have UIM coverage under the USAA policy for her wrongful death.

**25.** *Id.* at 1045 (citing *Temple*, 2000 WL 33113814; *Lafleur v. Fidelity & Casualty Co.*, 385 So.2d 1241, 1245 (La.Ct.App.1980)).

**26.** *Allstate Ins. Co. v. Hammonds*, 72 Wash. App. 664, 865 P.2d 560, 564 (1994).

**27.** *Id.*

**28.** *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148, 611 S.E.2d 24, 25 (2005), *superseded by statute*, Ga.Code Ann. § 33–7–11(a)(1), *as recognized in Dees v. Logan*, 282 Ga. 815, 653 S.E.2d 735, 739 (2007).

**29.** *Id.* (quoting Ga.Code Ann. § 33–7–11(a)(1) (2005)).

**30.** *Dees v. Logan*, 282 Ga. 815, 653 S.E.2d 735, 739 (2007).

**31.** *Id.* In several other states with the minority view, the statutes were changed after the rulings providing coverage. *See Bush v. State Farm Mut. Auto. Ins. Co.*, 905 N.E.2d 1003, 1007 n. 6 (Ind.2009).

**32.** *Shuba*, 2010 WL 8250754, at *2.

*Conclusion*

The judgment of the Superior Court is AFFIRMED.