# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| SPINE CARE DELAWARE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. K18C-07-008 NEP |
| | ) | |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY and STATE FARM | ) | |
| FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: November 8, 2021
Decided: February 24, 2022
Corrected: March 4, 2022
Public Version Issued: March 4, 2022

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Plaintiff's Motion for Summary Judgment*
**GRANTED**

*Upon Defendants' Motion for Summary Judgment*
**DENIED**

Jonathan L. Parshall, Esquire (argued), and Lauren A. Cirrinicione, Esquire, Murphy & Landon, P.A., Wilmington, Delaware, *Attorneys for Plaintiff*.

Donald M. Ransom, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, *Attorney for Defendants*.

Gavin Reinke, Esquire *(pro hac vice)* (argued), Alston & Bird LLP, Atlanta, Georgia, *Of Counsel for Defendants*.

**Primos, J.**

Before this Court are cross-motions for summary judgment. The plaintiff is Spine Care Delaware, LLC (hereinafter "SCD"), and the defendants are State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (hereinafter collectively "State Farm"). The issue in this case pertains to the reasonableness of SCD's charges for specific procedures. The complaint for declaratory relief was filed on July 11, 2018. For the following reasons, SCD's Motion for Summary Judgment is **GRANTED**, and State Farm's Motion for Summary Judgment is **DENIED**.

## I.   FACTS AND PROCEDURAL HISTORY

The majority of the facts in this matter are stipulated by the parties.[1] SCD is an ambulatory surgical center (hereinafter "ASC") that operates a facility in which independent physicians perform minimally invasive spinal injections on patients who have suffered injury in automobile accidents. SCD is licensed as a Free Standing Surgical Center (hereinafter "FSSC") by the State of Delaware.[2] Some of the patients who require spinal injections are insureds through Delaware Personal Injury Protection (hereinafter "PIP") coverage governed by 21 *Del. C.* § 2118(a)(2), which mandates insurers' responsibility to reimburse "reasonable and necessary expenses" for PIP coverage.[3] State Farm is an insurance provider that provides PIP coverage to Delawareans.

SCD patients may choose from a variety of treatment procedures, including bilateral[4] and multilevel[5] spinal injections. During a bilateral or multilevel spinal

---

[1] Defs.' Mem. of Law in Supp. of Mt. Summ. J. (hereinafter "Defs.' Mem. of Law"), Ex. 1, Stipulation for Use In Declaratory J. Action ¶¶ 1–16 (D.I. 124).
[2] Pl. SCD's Opening Br. on Remand in Supp. of Renewed Mt. Summ. J. (hereinafter "Pl.'s Opening Br."), Ex. C, Suppl. Aff. of Bonnie O'Connor at  ¶ 2 (D.I. 121).
[3] 21 *Del. C.* § 2118(a)(2).
[4] Spinal injections performed on both sides of the spine.
[5] Spinal injections performed on multiple vertebral levels.

2

injection, some tasks are performed only once,[6] despite the fact that the procedure covers two sides of the spine or multiple spinal levels.  For the second and subsequent injections, SCD charges the same facility fee as the first pursuant to its billing practice. The facility fee "is inclusive of all the parts of the procedure that take place within [SCD's] facility. . . . It's completely encompassing of whatever occurs within the operative session."[7]

To generate a bill, SCD utilizes Current Procedural Terminology (hereinafter "CPT") codes.[8]  The CPT codes are billing codes, copyrighted by the American Medical Association, to classify medical procedures.  Each CPT code corresponds to a specific medical procedure.  After a physician at SCD performs a spinal injection procedure, he or she uses the CPT codes to indicate which injections were performed. The CPT codes are written on a billing sheet, which is sent to SCD's billing department. The billing department reviews the CPT codes on the billing sheet and generates a bill based on SCD's prices for each type of injection, which it then submits to the patient's insurer.[9]

When State Farm receives a bill from SCD, it sometimes applies multiple payment reductions (hereinafter "MPRs") to the bills for bilateral and multilevel spinal injections and thereby fails to pay the bills in full.  State Farm applies the Medicare Claim Processing Guidelines as the basis for its MPRs and justifies its decision by arguing that it is common practice in the industry for insurers to apply MPRs.

---

[6] These non-repeated tasks include the preoperative assessment process, intravenous access on the patient, administration of intravenous antibiotics, and administration of preoperative medications. *See* Defs.' Mem. of Law, Ex. 16, Pl.'s Resp. to Defs.' Second Set of Interrog. at 5–7 (D.I.124); Defs.' Mem. of Law, Ex. 2, Dep. Tr. of O'Connor at 59, 60–61, 63 (D.I.124).

[7] Defs.' Mem. of Law, Ex. 2, Dep. Tr. of O'Connor at 25–26.

[8] For reference, "CPT Codes 64479, 64483, 64490, and 64493 all relate to a procedure done at either one side or one level; while CPT codes 64480, 64481, 64482, 64484, 64491, 64492, 64494, and 64495 all relate to a procedure done at either a second side or an additional level or levels."  Ltr. Confirming CPT Codes (Aug. 22, 2019) (D.I. 66).

[9] *See* Defs.' Mem. of Law, Ex. 2, Dep. Tr. of O'Connor at 28.

Under the Medicare Claim Processing Guidelines, an ASC that performs a multilevel procedure is paid one hundred percent of the highest paying procedure and fifty percent of the payment rate for other procedures.[10] For a bilateral procedure, the ASC is paid one hundred percent for one procedure, and fifty percent for the other procedure.[11] As the parties' stipulation sets forth, State Farm's reduction of SCD's bills using the Medicare Claim Processing Guidelines creates an "ongoing controversy between SCD and State Farm with respect to whether State Farm is entitled to the [50%] reductions."[12]

On July 08, 2019, both SCD and State Farm filed their respective motions for summary judgment. On October 29, 2019, this Court issued an order (hereinafter the "Order") granting SCD's Motion for Summary Judgment and denying State Farm's Motion for Summary Judgment.[13] In its Order, the Court applied the *Anticaglia v. Lynch*[14] and *Watson v. Metropolitan Property and Casualty Insurance Co.*[15] factors[16] to determine the reasonableness of the charges. Those factors are as follows:

> [t]he ordinary and reasonable charges usually made by members of the same profession of similar standing for services such as those rendered here, the nature and difficulty of the case, the time devoted to it, the amount of services rendered, the number of visits, the inconvenience and expense to which the physician was subjected, and the size of the city or town where the services were rendered. The Court also should consider the physician's education and training, experience, skill or capacity, professional standing or reputation, and the extent of the physician's

---

[10] Defs.' Mem. of Law, Ex. 8, Medicare Claims Processing Manual, Chapter 14, Section 40.5.
[11] *Id.*
[12] Defs.' Mem. of Law, Ex. 1, Stipulation for Use In Declaratory J. Action ¶ 15.
[13] *Spine Care Delaware, LLC v. State Farm Mut. Auto. Ins. Co.* (hereinafter "*Spine Care I*"), 2019 WL 5581441 at *5 (Del. Super. Oct. 29, 2019), *rev'd and remanded*, 238 A.3d 850 (Del. 2020).
[14] 1992 WL 138983, at *6 (Del. Super. Mar. 16, 1992).
[15] 2003 WL 22290906, at *6 (Del. Super. Oct. 2, 2003).
[16] In these two decisions, the Superior Court applied the factors listed *infra* to determine the reasonableness of fees charged by medical providers for their services.

business or practice. Finally, the Court should consider the ability of the defendant to pay.[17]

Utilizing these factors, the Court found that there was not enough evidence to make a final determination on reasonableness because SCD's evidence "substantively addresses only one of the [*Anticaglia/Watson*] factors, namely, the ordinary and reasonable charges of similarly situated professionals."[18] State Farm filed a notice of appeal on November 18, 2019.

The Supreme Court reversed and remanded, finding that this Court had erred when it placed the burden of proof on State Farm.[19] In addition, the Supreme Court found that this Court had erred in determining that all of the *Anticaglia* and *Watson* factors should be given equal weight in the reasonableness analysis.[20] The Supreme Court explained that these factors, other than the first (the ordinary and reasonable charges of similarly situated professionals), are "less relevant here, if at all"[21] because they "address challenges to individual medical bills, whereas here, we are reviewing a discounting method being generally applied to a provider's charges."[22] Thus, "a more flexible approach to the reasonableness determination, as opposed to a rigid application of all the factors"[23] is appropriate in this circumstance, "[g]iven the manner in which the parties have framed the case."[24]

---

[17] *Spine Care I*, 2019 WL 5581441, at *3 (internal citations omitted) (quoting *Anticaglia*, 1992 WL 138983, at *6); *see Watson*, 2003 WL 22290906, at *5–6 (applying the *Anticaglia* factors in the PIP context).

[18] *Id.* at *2 n.15.

[19] *State Farm Mut. Auto. Ins. Co. v. Spine Care Delaware, LLC* (hereinafter "*Spine Care II*"), 238 A.3d 850, 858-60 (Del. 2020).

[20] *Id.* at 862.

[21] *Id.* at 858.

[22] *Id.* at 862.

[23] *Id.* at 858.

[24] *Id.*

The Supreme Court, "in order to be as helpful as possible,"[25] provided guidance to this Court on remand, as part of "the law of the case."[26] The Supreme Court made three succinct holdings: 1) "The factor most germane to this case is the ordinary and reasonable charges usually made by members of the same profession of similar standing;"[27] 2) this Court had "aptly observed that situations involving Medicare or insurers who have contractual relationships with SCD are distinguishable"[28]; and 3) "[t]he burden . . . is on SCD to show that State Farm is not entitled to take the Medicare guidelines-based MPRs. And to answer that question, SCD first has to demonstrate that its charges for the second and subsequent injections are reasonable. . . . Thus, the court must address on remand whether SCD's fees for bilateral and multilevel injection procedures are reasonable."[29]

On remand, this Court allowed limited additional discovery to address a potential broader universe comparing the charges of SCD with those of its peers, *i.e.*, with "similarly situated professionals."[30] After such discovery, both parties again filed summary judgment motions. The Court held oral argument on November 08, 2021. The Court has reviewed the parties' submissions, including all exhibits, and thoroughly considered the arguments of the parties.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[25] *Id.* at 862.
[26] *See Marine v. State*, 624 A.2d 1181, 1184 n.5 (Del. 1993) ("Previous holdings of an appellate court constitute the law of the case and are conclusive as to litigated issues decided on remand and subsequent appeal." (citing *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990))).
[27] *Spine Care II*, 238 A.3d at 862.
[28] *Id.* at 863.
[29] *Id.* at 857, 862.
[30] *Spine Care Delaware, LLC v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 7343026, at *3 (Del. Super. Dec. 14, 2020) (quoting *Spine Care II*, 238 A.3d at 861).

a judgment as a matter of law."[31] The presence of cross motions for summary judgment filed by opposing parties does not change the standard.[32] Thus, on cross motions, "each moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law in order to prevail."[33] Further, the Court must draw all factual inferences in a light most favorable to the non-moving party.[34]

## III. DISCUSSION

As mentioned *supra*, the Supreme Court instructed this Court on remand to focus on the first factor set out in *Anticaglia* and *Watson*—the "ordinary and reasonable charges [of similarly situated professionals]"—as "the most relevant" and "pertinent" with regard to the reasonableness of fees.[35] In this matter, the burden rests on SCD to prove, by a "preponderance of the evidence,"[36] that the fees it charges for bilateral and subsequent spinal injections are reasonable.

### A. Ordinary and Reasonable Charges

As the Supreme Court noted, in order to get to the question of whether the MPR reductions are applicable, this Court must first determine if SCD's charges for its second and subsequent shots are reasonable. To do this, the Court looks to "members of the same profession of similar standing" to SCD. Before the Court are six different

---

[31] Del. Super. Ct. Civ. R. 56(c).

[32] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1227 (Del. Ch. 2000) (citation omitted).

[33] *Olson v. Halvorsen*, 982 A.2d 286, 290 (Del. Ch. 2008), *aff'd,* 986 A.2d 1150 (Del. 2009) (internal quotations and citations omitted); *see also Shuba v. United Servs. Auto. Ass'n,* 77 A.3d 945, 947 (Del. 2013) ("'When opposing parties make cross motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.'" (quoting *Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 745 (Del.1997))).

[34] *Alabi v. DHL Airways, Inc.,* 583 A.2d 1358, 1361 (Del. 1990); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 100 (Del. 1992).

[35] *Spine Care II*, 238 A.2d at 858, 862.

[36] *Watson*, 2003 WL 22290906, at *5 (stating that the claimant "'bears the burden of proof to establish by a preponderance of the evidence that the medical services received were necessary and that the bills or charges for such services were reasonable.'" (quoting 17 Lee R. Russ & Thomas F. Segalla, Couch On Insurance § 254:59 (3d ed. 2001))).

providers produced from discovery that deliver spinal injections comparable to SCD's.[37] The Court finds that of these six, there are three, in addition to SCD, that make up the applicable universe of comparison. The other three—Beebe Medical Center, Outpatient Surgery Center, and Mainline Surgery Center—are not applicable comparators as "members . . . of similar standing" for the following reasons:

(1) Beebe Medical Center is not a "similarly situated professional[]"[38] because it is a hospital. The fees it charges, for the CPT codes at issue, do not include multiple charges that are included in SCD's facility fee.[39] For example, Beebe's fees include separate charges for pharmacy products (0250), sterile supply (0272), drugs (0636), and a recovery room (0710)[40] all of which would be included in SCD's facility fee as an FSSC.[41]

(2) Outpatient Surgery Center is not "similarly situated" because it is an Office Based Surgery Center (hereinafter "OBSF"), and is thus regulated under a different statutory code.[42] An OBSF "is a physician office in which some limited surgical procedures may be performed."[43] Typically, an OBSF is paid a higher professional fee, in lieu of a higher facility fee, because of the nature of its business.[44]

---

[37] The six providers are as follows:  1) Beebe Medical Center; 2) Outpatient Surgery Center; 3) Mainline Surgery Center;  4) XYZ Procedure Centre;  5) First State Surgery; and  6) Christiana Spine Care. XYZ Procedure Centre's name has been "anonymized in court filings to protect [its] proprietary pricing information." Defs.' Mem. of Law at 10 n.3.  There was an additional ASC, Cherry Hill ASC, LLC, concerning which SCD sought discovery regarding the amounts it billed for the procedures at issue, but State Farm could not locate any bills from that provider after a "diligent search." Defs.' Mem. of Law at 17.

[38] *Spine Care II*, 238 A.3d at 862.

[39] *Compare*  Defs.' Mem. of Law, Ex. 2, Dep. Tr. of O'Connor at 25–26 (listing charges included in facility fee) *with* Defs.' Mem. of Law, Ex. 11 (reflecting an itemized bill from Beebe Medical Center).

[40] Defs.' Mem. of Law, Ex. 11.

[41] *See* Pl.'s Answering Br. at 5 (citing Defs.' Mem. of Law, Ex. 2, Dep. Tr. of O'Connor at 25–26).

[42] 16 *Del. C.* §122(3)y.

[43] Pl.'s Opening Br., Ex. C, Suppl. Aff. of Bonnie O'Connor ¶ 3.

[44] *Id.*

(3) Main Line Spine Surgery Center is not "similarly situated" because it is located outside Delaware, *i.e.*, in Pennsylvania,[45] and because Pennsylvania law does not allow PIP claims to be "in excess of the Medicare payment pertaining to the applicable specialty under Medicare."[46] In Delaware, the PIP statute does not incorporate the Medicare fee schedule.[47]

Therefore, the Court finds that, of the six providers presented to the Court, First State Surgery (hereinafter "First State"), XYZ Procedure Centre (hereinafter "XYZ"), and Christiana Spine Care (hereinafter "Christiana") are "members of the same profession of similar standing" to SCD. All three are located in Delaware and are FSSCs. State Farm does not contend that these distinctions are not accurate; however, it argues that they are "irrelevant"[48] because they do not go towards "whether it is reasonable to charge the same amount for the second and subsequent spinal injections performed in a single operative session as the amount charged for the first injection."[49] To the contrary, the distinctions *are* relevant pursuant to the *Anticaglia* and *Watson* factors, which the Supreme Court has now made the law of the case.[50] As mentioned *supra,* some of these other providers are guided by Medicare fee schedules, and others have different payment objectives incorporated into their fees due to the nature of their businesses.

---

[45] *See Anticaglia*, 1992 WL 138983, at \*6 (refusing to consider "data outside of Delaware" as "evidence of reasonable and customary fees in Delaware").

[46] 31 Pa. Code § 69.21 ("The provider may not require payment in excess of the Medicare payment pertaining to the applicable specialty under Medicare for comparable services at the time services were rendered, or the provider's usual and customary charge, whichever is less. An insurer shall use the Medicare payment applicable in this Commonwealth to determine the appropriate payment. The applicable Medicare payment shall be utilized even when a service is not a reimbursed service under Medicare. If no Medicare payment has been calculated, payment shall be 80% of the provider's usual and customary charge.").

[47] *See* 21 *Del. C.* § 2118(a)(2).

[48] Defs.' Answering Br. in Resp. to Pl.'s Mt. Summ. J. (hereinafter "Defs.' Answering Br.") at 8 (D.I. 131).

[49] *Id.*

[50] *See Spine Care II*, 238 A.2d at 862 ("The factor most germane to this case is the ordinary and reasonable charges usually made by members of the same profession of similar standing.").

In short, the Court is tasked with identifying "members of the same profession of similar standing"[51] and comparing their fees and discounting methods with SCD's to determine "reasonableness."[52] Thus, SCD, and the three other providers mentioned *supra* (*i.e.,* First State, XYZ, and Christiana), are the scope of the universe for this case based on the record before the Court.

To begin the "reasonableness" analysis, the Court points out that there is a distinction in the method of discounting for two versus three injections performed in either a bilateral or a multilevel procedure.[53] For a procedure involving only two spinal injections, SCD stands last compared to its peers in total fees.[54] Accordingly, the argument frequently raised in the briefs by State Farm that PIP insurance is being "prematurely exhaust[ed]"[55] by SCD's billing practices against the "best interests of Delaware insureds"[56] belies the reality that for these two-injection procedures, SCD is depleting PIP resources *at a lower rate* than its relevant peers. For procedures involving three spinal injections, SCD is ranked second out of four, but with regard to total fees, SCD is closer to the bottom of the list than to the top.[57] Consequently, the Court finds that SCD's total fees are reasonable for the second and subsequent injections, and can end the inquiry there as to the "most germane" factor.[58]

Nevertheless, the Court will, in the alternative, turn to the narrower question of whether SCD must reduce its fees for the second and subsequent injections, even

---

[51] *Id.*

[52] *Spine Care II*, 238 A.3d at 861 ("Because we are reversing and remanding on the burden of proof error, we address the reasonableness standard to be applied.").

[53] The Court illustrates with the graphs referenced *infra*, which are attached as appendices. *See* Appendix A–C.

[54] *See* Appendix A.1.

[55] Defs.' Mem. of Law at 24.

[56] *Id.* at 25.

[57] *See* Appendix A.2.

[58] In addition to the charges for the individual procedures, SCD has provided the Court benchmarking reports that indicate that SCD's "2017 per-case revenue was $1,099.24—well below the high end for pain management . . . and quite close to the nationwide median." SCD's Opening Br. at 12 (D.I. 121). *See* Pl.'s Opening Br., Ex. B, O'Connor Aff. ¶ 12; Pl.'s Opening Br., Ex. I & J, Benchmark Reports.

though its total fees for bilateral and multilevel procedures are reasonable. First, the Court considers this a question for the General Assembly, *i.e.*, by imposing such a standard divorced from reasonable total fees, the Court would be exceeding its judicial function. However, even if it were to consider the reductions divorced from the total fees, the Court finds that SCD's practice of not reducing fees for subsequent spinal injections is in line with "members of the same profession of similar standing."

To illustrate, for procedures involving two spinal injections, only one provider out of the four relevant providers—Christiana—reduces its fees for the second injection in a single operative procedure.[59] Turning to procedures involving three injections in a single operative procedure, the record shows that two of the four relevant providers reduce injections in some way:[60] XYZ sometimes reduces the fee for the third injection in the same operative procedure, and Christiana reduces both its second and third injections by percentages ranging from 18.75% (reduction on second injection) to 3.85% (reduction on third injection).[61] Nonetheless, even without reduction, SCD's total fees for a three-injection procedure are in line with those of its peers.[62]

Next, the Court turns to other logical implications of State Farm's focus on the fees for the second and subsequent injections to the exclusion of fees for the first

---

[59] *See* Appendix A.1.

[60]

[61] *See* Appendix A.2.

[62] *Id*. *Cf. Anticaglia*, 1992 WL 138983, at \*6 (finding that where average fees for a particular procedure were $160, and median fees in the 90th percentile were $270, the insurance carrier's reduced payment of $270 was reasonable).

injection.[63]  Looking at the second spinal injection, without consideration of the first, the Court finds that the charges are comparable and reasonable, as SCD's charge comes in third compared to its peers and below the average total.[64]  Turning to the third spinal injection, without taking into consideration the first or second injection, the Court finds that SCD is not the highest among its peers and is within a reasonable distance from the average.[65]  Looking at the second and third injections' charges combined, SCD is not the highest and is minimally distanced from the average total.[66]  Thus, no matter how the Court views the evidence, the fees SCD charges for the second and subsequent spinal injections, either bilateral or multilevel, are ordinary and reasonable.[67]

Lastly, the Court will address State Farm's application of Medicare MPRs—*i.e.*, a 50% reduction—to SCD's bills.[68]  The Court finds that any reduction, including a 50% reduction, is inappropriate because, as mentioned *supra¸* SCD has proven that it is entitled to judgment as a matter of law in this case—*i.e.*, it has proven by a preponderance of evidence that its charges are reasonable.[69]  It is worth noting, however, that State Farm's application of the 50% reduction has effectively rendered

---

[63] *See* Defs.' Answering Br. at 1 ("The only dispute between Spine Care and State Farm about the amount Spine Care bills involves the amount that Spine Care charges for second and subsequent injections performed when a patient receives more than one spinal injection in a single operative session.").

[64] *See* Appendix B.1.

[65] *See* Appendix B.2.

[66] *See* Appendix B.3.

[67]

[68] Defs.' Mem. of Law, Ex. 1, Stipulation for Use In Declaratory J. Action ¶¶ 6, 9.

[69] Of course, the application of Medicare MPRs to SCD's charges by State Farm is of questionable propriety for a separate reason, *i.e.*, because the Supreme Court has held that the MPRs applied in connection with Medicare payments are not relevant to the consideration of whether State Farm is obligated to pay SCD's fees without reduction. *Spine Care II*, 238 A.2d at 863.

SCD's total fees accumulated from either two-injection or three-injection procedures more than 24% lower (for two spinal injections)[70] and almost 29% lower (for three spinal injections)[71] than those of any of its peers, including the peers that reduce second and subsequent injections to some degree.

## B. Other Factors and Considerations

The other factors articulated in *Anticaglia* are not relevant to this matter and are unworkable given the nature of  how the "parties have framed the case[.]"[72]  As mentioned *supra*, the Supreme Court pointed out that this case is not dealing with "individualized, case specific challenges" but a generally applied "billing methodology."[73]  Specifically, the weight of the other factors, when they are employed, is derived from the "individualized context"[74] of the relationship between a provider and a patient,[75] and it would be impracticable to pinpoint or forecast past and future individual patients' services and apply them in the context of the "general practice" of State Farm's application of MPRs to SCD's charges.[76]

SCD filed this action because State Farm was unilaterally applying a 50% reduction to SCD's second and subsequent shots, which greatly exceeds any reduction found among its peers.  Unlike *Anticaglia*, where the carrier did its own statistical

---

[70] *See* Appendix C.1.
[71] See Appendix C.2.
[72] *See Spine Care II*, 238 A.3d at 858.  Facts disputed that pertain to these other factors, such as the degree of potential cost savings for repeated tasks, are not material given their lack of relevance under the law of the case.  *See Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009) ("A fact is material if it 'might affect the outcome of the suit under the governing law.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986))).
[73] *See Spine Care II*, 238 A.3d at 858.
[74] *Id.*
[75] *See*, *e.g.*, *Anticaglia*, 1992 WL 138983, at *1 (dealing with an insured's challenge to a physician's alleged "outrageous" charges); *Watson*, 2003 WL 22290906, at *1 (dealing with an insured's challenge to the insurer's denial of her incurred individual medical expenses).
[76] *Spine Care II*, 238 A.3d at 858.

13

analysis and paid above the total average,[77] here State Farm has effectively decided that SCD will receive the least in total fees as compared to any of its peers.[78]

In addition, the exhibits reveal that, when a reduction is applied by a provider for a second or subsequent injection, the percentage reduction appears arbitrary in practice.[79] In light of that, the argument that some discount is warranted in *every* circumstance would require the provider to perform an independent analysis on each patient to measure cost savings.[80] Thus, as mentioned *supra¸* the only appropriate measure of "reasonableness" for a "discounting method [that is] being generally applied to a provider's charges"[81] is examining the fees and comparing them to the fees of other providers that are similarly situated.

SCD, no matter which way the Court views its fees, is never the highest, and sometimes the lowest, among its peers for bilateral and multilevel spinal injections. To force an arbitrary percentage reduction when SCD has shown that it charges are in line with the ordinary and customary fees of professionals of similar standing would be illogical and beyond the Court's duty.[82] Accordingly, SCD has met its burden to show that its fees for the second and subsequent spinal injections are reasonable.[83]

---

[77] *See Anticaglia*, 1992 WL 138983, at *5 ("The Delaware statistics show an interesting pattern. . . . The total average fees for all claims were $128. Median fees in the 90th percentile were $200. (DX 6 & 8). Thus, Provident paid Dr. Anticaglia $200, although he charged $688.").

[78] *See* Appendix C.1–C.2.

[79] There appears to be no rhyme or reason to the percentage reduction for bilateral and multilevel spinal injections. First State applies no reduction to its spinal injections for bilateral and multilevel procedures. XYZ applies no reduction to its second injection, and then *sometimes* applies a 50% reduction to its third injection. Christiana applies an approximately 19% reduction for the second injection and an approximately 4% reduction for the third injection. *See* Appendix A.1.

[80] As SCD has noted in its briefing, cost savings, if any, may depend on the individual patient's "unique anatomy[.]" See Pl.'s Answering Br. at 9.

[81] *Spine Care II*, 238 A.3d at 862.

[82] *See Anticaglia*, 1992 WL 138983, at *5 ("It is the Court's duty to determine whether charges sued upon by a physician . . . are unreasonable and excessive, and if so, to make a proper reduction after giving consideration . . . to all factors rendering the services more onerous and justifying an increase over the reasonable and customary charges." (citing 61 Am.Jur.2d Physicians, Surgeons, and Other Healers § 388 (1981))).

[83] *Cf. Spine Care II*, 238 A.3d at 858 ("Because SCD's evidence **goes far** in establishing the reasonableness of its fees, and because the court expressly found that State Farm's MPRs bore no

14

# IV. CONCLUSION

**WHEREFORE,** for the foregoing reasons, SCD's Motion for Summary Judgment is **GRANTED**, and State Farm's Motion for Summary Judgment is **DENIED**. Accordingly, the Court issues a judicial declaration that:

(1) SCD's fees for second and subsequent spinal injections for bilateral and multilevel procedures are reasonable medical expenses pursuant to 21 *Del. C.* § 2118(a)(2); and

(2) State Farm's practice of applying Medicare-prescribed MPRs to reduce SCD's bills for bilateral and multilevel procedures violates 21 *Del. C.* § 2118(a)(2).

**IT IS SO ORDERED.**

_____
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record

---

correlation to the fees, we could be tempted to affirm based upon the record before us." (emphasis supplied)).

15

# Appendices to Opinion of the Court[84]

## Appendix A. ███████████████████

**A.1.** ██████████████



[85]

**A.2.** ██████████████

## Appendix B. ██████████████████████████████

**B.1.** ██████████████

---

[84] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[85] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**B.2.**



**B.3.**

**Appendix C.**

**C.1.**

17