# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N20C-08-249 MAA CCLD |
| v. | ) | |
| | ) | |
| VIKING HOLDING | ) | |
| MANAGEMENT COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 8, 2024
Decided: February 15, 2024

*Plaintiff's Motion for Summary Judgment*:
**DENIED.**

*Plaintiff's Daubert Motion to Exclude Testimony of Defense Witness
Darren Schulman*:
**DENIED.**

*Defendant's Motion for Summary Judgment*:
**DENIED.**

*Defendant's Daubert Motion to Exclude the Opinions and Testimony of
Ralph Koch*:
**DENIED.**

*Defendant's Daubert Motion to Exclude the Opinions and Testimony of
Mark Roberts*:
**DENIED.**

## <u>MEMORANDUM OPINION</u>

John M. LaRosa, Esquire, of LAROSA & ASSOCIATES LLC, Wilmington, Delaware,  and Lawrence P. Schaefer, Esquire, Bert Black, Esquire, Mack H. Reed, Esquire, Timothy S. Christensen, Esquire (Argued), and Anne C. Bolgert, Esquire, of SCHAEFER HALLEEN, LLC, Minneapolis, Minnesota, Attorneys for Plaintiff.

Peter H. Kyle, Esquire (Argued), John L. Reed, Esquire, and Daniel P. Klusman, Esquire, of DLA PIPER, LLP, Wilmington, Delaware, Attorneys for Defendant.

**Adams, J.**

This is a breach of contract action arising from an entity's repurchase of plaintiff's membership units in the entity. The parties have collectively filed five motions for summary judgment and *Daubert* motions to exclude various testimony and opinions of each side's experts. The Court heard oral argument on the motions on January 8, 2024. The Court assumes familiarity with the procedural history and the facts of this case and only recites them as necessary to conduct its analysis.[1] For the reasons below, the motions for summary judgment and *Daubert* motions are denied.

## I. RELEVANT FACTS[2]

### A. The Restructuring

On February 10, 2016, Plaintiff Michael Buck ("Buck") began his employment at Novus Media Inc. as the Chief Financial Officer.[3] Around this time, Novus Media Inc. was transitioning from one financial system to another.[4] Novus Media Inc. also underwent a restructuring on or about April 12, 2017.[5] Novus Media Inc. became Novus Media LLC ("Novus"), and Viking Parent LLC ("Viking

---

[1] Trial in this action is set to begin on April 15, 2024. The parties have filed eight additional motions in limine that will be addressed during the pre-trial conference scheduled for March 15, 2024.

[2] Unless otherwise noted, the factual background is drawn from the undisputed facts in the parties' pleadings and documentary exhibits submitted by the parties.

[3] Amended Complaint ("Am. Compl.") ¶ 22 (D.I. 24).

[4] *Id.* ¶ 27.

[5] *Id.* ¶ 32; Transmittal Affidavit of Daniel P. Klusman, Esq. in Support of Defendant Viking Holding Management Company LLC's Motion for Summary Judgment ("Klusman Aff.") (D.I. 125) Ex. B (the "Holdco Agreement").

Parent") became the new owner.[6]  As part of the restructuring, several employees, including Buck, received non-voting membership units in Viking Holding Management Company LLC ("Holdco"), Viking Parent's controlling entity.[7]

**B. Holdco's Repurchase Option**

Pursuant to Holdco's LLC Agreement (the "Holdco Agreement"), Holdco held an option to repurchase Buck's membership units for their "Original Cost"[8] in the event Buck's employment at Novus terminated "for Cause."[9]  Section 9.10(b) requires that:

> [t]he purchase price for all Units repurchased pursuant to this Section 9.10 shall be equal to the Fair Market Value thereof; provided that in the event that [Buck] ceased to be employed by [Novus] as a result of a termination for Cause, the purchase price for all Units repurchased pursuant to this Section 9.10 shall be the lower of the Original Cost thereof and the Fair Market Value thereof….[10]

The Holdco Agreement defines five potential bases for Cause, including, in relevant part:

> (iii)  such Service Unitholder's substantial and repeated failure, after written notice from [Holdco], to perform duties (or refrain from actions) as reasonably directed by [Holdco, Viking Parent, or Novus];

---

[6] Am. Compl. ¶ 32.

[7] *See* Holdco Agreement, Recitals; *Id*., Schedule of Unit Holders.

[8] *See* Holdco Agreement, Art. I ("'Original Cost' of a Unit means $0.00, unless such Unit is issued in exchange for a Capital Contribution, in which case the Original Cost of such Unit shall be equal to the amount of such Capital Contribution divided by the number of Units issued in exchange for such Capital Contribution, in each case, as proportionately adjusted for all subsequent unit splits, unit dividends and other recapitalizations affecting such units.").

[9] *See id*. §§ 9.10(a) and (b).

[10] *See id*. § 9.10(b) (underline in original).

4

(iv) such Service Unitholder's gross negligence, willful misconduct or breach of fiduciary duty with respect to any of [Holdco, Viking Parent, or Novus] or their business relations . . . that results (or could reasonably be expected to result) in a significant adverse effect on the business or affairs of [Holdco, Viking Parent, or Novus] . . . .[11]

Thus, if an employee-member is not terminated for Cause, Holdco is limited to repurchasing the member's units at their Fair Market Value.[12] If an employee-member is terminated for Cause, however, Holdco may repurchase the units for "the lower" of their (i) Original Cost, and (ii) Fair Market Value.[13]

## C. Implementation Issues and 2017 Audit

During 2017, Novus continued to undergo changes to its financial system due to the restructuring.[14] As a result of data reconciliation issues, Buck participated in a process that involved establishing a new clearing account to house unreconciled accounts or activity (the "AMR Account").[15] Buck delegated responsibility to his finance team and worked with outside contractors in an effort to resolve the issues.[16]

---

[11] *Id.*, Art. I for definition of "Cause;" the other bases are not at issue. *See* Viking Holding Management Company LLC's Opening Brief in Support of its Motion for Summary Judgment ("Holdco's Motion") at 10 (D.I. 125).

[12] *See id.*, Art. I for definition of "Fair Market Value;" *id.* § 9.10(b).

[13] *Id.* § 9.10(b)

[14] Am. Compl. ¶¶ 32–34.

[15] Plaintiff Michael Buck's Appendix Regarding His Motion for Summary Judgment ("Buck App.") (D.I. 129) Ex. 15 at HOLDCO-216-217, Ex. 3 (Buck Deposition) 63:5–65:7, 179:22–181:19.

[16] *Id.* Ex. 3 (Buck Deposition) 63:5–65:7.

On April 30, 2018, Grant Thornton LLP ("Grant Thornton") concluded its financial audit of Novus for the 2017 financial year.[17]  Although it issued an "unqualified opinion,"[18] Grant Thornton noted, in an audit presentation, a "material weakness" in internal controls and a "significant deficiency" as it related to the Chief Financial Officer's ability to record journal entries in the financial system.[19]

**D. The Whistleblower Letter and Investigations into Novus' Accounting Practices**

Approximately one year later, in April 2019, Grant Thornton received an anonymous letter, recommending that "an unqualified opinion on the financial statements should not be issued for the 2018 fiscal year" (the "Whistleblower Letter").[20]  Grant Thornton delayed its issuance of the 2018 audit opinion.[21]  Novus also engaged Thompson Coburn LLP ("Thompson Coburn") and Ernst and Young LLP ("Ernst and Young") to conduct an investigation into the allegations raised in the Whistleblower Letter.[22]

In November 2019, Thompson Coburn and Ernst and Young provided their reports to Novus.[23]  Although Thompson Coburn found many of the allegations to

---

[17] Klusman Aff. Ex. C (Grant Thornton 2017 Audit Presentation).
[18] Buck App. Ex. 20 (Schulman Deposition) at 175:7-9.
[19] Klusman Aff. Ex. C at NOVUS01956.
[20] Klusman Aff. Ex. D (Whistleblower Letter).
[21] Buck App. Ex. 16 (Dykstra Deposition) at 16:20–18:4.
[22] Klusman Aff.  Ex. E (Thompson Coburn Report) at HOLDCO-107-108; Klusman Aff. Ex. F (Ernst and Young Report).
[23] Klusman Aff. Exs. E and F.

be "too vague to be meaningfully investigated[,]"[24] Thompson Coburn's Report found that:

- a year-end 2017 $1.7 million write-off, and several days later in 2018, reversal, on Novus' books were "potentially fraudulent." Thompson Coburn, however, did "not uncover sufficient evidence to prove intentional wrongdoing or fraud;"[25]

- an employee left Novus due to "ethical" concerns relating to Novus' accounting practices. Buck's failure to notify the Novus Board of Directors "may constitute a breach of [his] fiduciary duties[.]"[26]

Ernst and Young found that:

- email correspondence with Buck indicated potential pressure to meet financial targets at year-end 2017;[27]

- Buck approved manual journal entries, despite initially denying that he did so and that he had knowledge of certain write-offs and reversals;[28] and

- the $1.7 million write-off "had the net effect of reducing Cost of Sales," increasing "Gross Margin by $1.7 million" for the 2017 fiscal year.[29]

One month later, in December 2019, Ernst and Young provided an addendum to its report after it received additional documentation regarding year-end journal entries. Ernst and Young found, in part that, the year-end $1.7 million write-off and reversal appeared to have no "mathematical impact" to Novus' 2017 and 2018

---

[24] Klusman Aff. Ex. E at HOLDCO-120.
[25] *Id.* at HOLDCO-108.
[26] *Id.* at HOLDCO-109.
[27] Klusman Aff. Ex. F at HOLDCO-128–129.
[28] *Id.*
[29] *Id.* at HOLDCO-143.

income statements due to a reclassification of the entries to another account.[30] Nonetheless, Ernst and Young was "unable to identify the purpose" of the entries "[d]ue to the limited documentation provided" for the account transaction for 2017 and 2018 and "the lack of explanation provided by Novus management regarding" the entries.[31]

On December 27, 2019, following the Thompson Coburn and Ernst and Young reports, Novus engaged FGMK, LLC ("FGMK") for an initial week-long, $15,000 engagement to "defin[e] the nature of the problem and a recommended path forward."[32] Among the findings gathered from its onsite visit to Novus, FGMK noted that "current practices" were "not typical accounting" practices and have "likely led to the need for large material journal entries at year end."[33] FGMK further indicated that the change from one financial system to another was the "root cause" for the need to create the AMR Account.[34]

In addition, the "AMR situation" demonstrated "a lack of institutional control," and that "[t]here appears to be no defined plan to resolve the AMR situation, nor has there been since it first emerged in 2015."[35] FGMK further found

---

[30] Klusman Aff. Ex. G (Ernst and Young Addendum) at HOLDCO-230.

[31] *Id.* at HOLDCO-231.

[32] Buck App. Ex. 32.5 (FGMK Letter) at NOVUS01163. David Murphy, the CEO of Novus, labeled this engagement letter "Evidence" and the subsequent report "Key Evidence." Buck App. Ex. 7 (Murphy Deposition) at 120:13–21; 147:11–19.

[33] Buck App. Ex. 23 (FGMK Report, dated January 17, 2020) at NOVUS01178.

[34] *Id.*

[35] *Id.* at NOVUS01179–01180.

that the "current CFO" did not have the "requisite skills" to lead the finance team at Novus.[36]   On March 19, 2020, FGMK provided a report to Novus, finding deficiencies across Novus' Finance Department's operations, and recommending the immediate termination of Buck as Chief Financial Officer.[37]

On April 1, 2020, Grant Thornton completed its (delayed) 2018 audit, and issued an "unqualified opinion."[38]  The post-audit presentation by Grant Thornton, however, noted "a significant risk" in "[m]anagement override of internal controls," and a "material weakness" regarding "the Company's review controls."[39]

### E. Buck's Termination and Holdco's Repurchase of His Interests

On April 17, 2020, nearly a year after receipt of the Whistleblower Letter, Novus fired Buck for Cause.[40]   In a June 17, 2020 letter (the "June Letter"),[41]

---

[36] *Id*. at NOVUS01180.

[37] *See* Klusman Aff. Ex. I (FGMK Draft Report, dated March 19, 2020) at HOLDCO-078. FGMK's report is labeled "draft." *Id.*  According to Buck's counsel, Exhibit 35 to Buck's Motion for Summary Judgment is a "true and correct copy of a FGMK presentation I received from Holdco in the course of discovery.  Holdco and Novus have produced only one version of this presentation in discovery."  Declaration of Timothy S. Christensen in Support of Plaintiff Michael Buck's Motion for Summary Judgment, ¶ 37 (D.I. 124).

[38] Buck App. Ex. 20 (Schulman Deposition) at 175:7–9; *Id*. Ex. 12 (Consolidated Financial Statements and Report of Independent Certified Public Accountants of Viking Parent LLC) at NOVUS02244.

[39] Buck App. Ex. 43 at HOLDCO-203, 211.  Buck argues that Grant Thornton revised the post-audit presentation to include the above facts after a call with Novus.  Plaintiff Michael Buck's Opening Brief in Support of His Motion for Summary Judgment ("Buck's Motion") at 22–23 (D.I. 124).

[40] Am. Compl. ¶ 39; *see* Buck App. Ex. 45 (Termination Script).

[41] Klusman Aff. Ex. M (June Letter); Buck insists that the June Letter is an inadmissible settlement communication, and therefore should be excluded under Delaware Rule of Evidence 408.  Buck's Motion at 36.  Rule 408 provides that the following evidence is "not admissible on behalf of any party either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction;

Thompson Coburn outlined to Plaintiff's counsel the "numerous incidents which support the finding of cause," including: (1) the Whistleblower Letter; (2) Buck's failure to notify the Novus Board of an employee's departure; and (3) Buck's initial denial of any awareness related to the $1.7 million write-off and reversal, as well as the manual journal entries.[42] Based on its determination that Buck was terminated

---

> (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in order to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim…."

D.R.E. 408. Thompson Coburn headlined the June Letter with "for settlement purposes only, pursuant to FRE 408" and included in a single paragraph on the last page the only potential Rule 408 communication. *See* Klusman Aff. Ex. M. Plaintiff, however, is moving to exclude the entirety of the document. The June Letter does not qualify for exclusion. The letter summarizes statements and conduct that occurred prior to Plaintiff's termination and before any settlement negotiations commenced. Buck also cannot now argue that the reasons outlined in the letter are inadmissible after Buck placed the contents of the letter at issue by devoting nearly half of the allegations in the Amended Complaint to disproving the reasons given in the letter. *See* Am. Compl. ¶¶ 46–105; Order Denying Defendant's Motion to Dismiss First Amended Complaint (D.I. 35) ("The Amended Complaint pleads that the reasons given by Holdco and Novus for the plaintiff's termination were 'manufactured.' See Am. Compl. ¶¶ 45, 120. The Amended Complaint also pleads Holdco knew Novus's stated reasons for termination were manufactured… the amended complaint adequately states a claim for breach of contract relating to Holdco's conclusion that the plaintiff's termination was cause-based."); *In re Morrow Park Hldg. LLC*, 2022 WL 3025780, at *9, n.85 (Del. Ch. Aug. 1, 2022), *as corrected* (Aug. 16, 2022), *reargument denied*, 2022 WL 3369940 (Del. Ch. 2022) (finding waiver of objection under D.R.E. 408 when same party relied on exhibit earlier).

[42] Klusman Aff. Ex. M at HOLDCO-1080. The June Letter also includes a litany of other performance-related and departmental reasons, including: Ernst and Young's evaluation of Buck's performance as a CFO; Mr. Buck's delegation-related decisions; FGMK's report regarding its view of Buck's leadership and operations in implementing new financial systems, as well as its review of Novus' Finance Department's operations; and Grant Thornton's Material Weakness classifications. *Id.* The June 2020 Letter further alleges that Grant Thornton would terminate its relationship with Novus unless Buck was removed. *Id*. at HOLDCO-1082–83.

for Cause, Holdco exercised its repurchase option under Section 9.10 of the Holdco Agreement for Buck's membership units at $0.00.[43]

Buck moves for summary judgment that there was no Cause for his termination and seeks a trial to determine the fair market value of his membership units.[44] Conversely, Holdco moves for summary judgment that there was Cause and, in the alternative, if there was not, that the fair market value of Buck's units is $3,250,000.[45] The parties have also moved to exclude or limit the other party's expert testimony.

## II. STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 56, the Court cannot grant a motion for summary judgment unless there is no genuine issue of material fact and the party is entitled to judgment as a matter of law.[46] "When opposing parties make cross motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as

---

[43] Am. Compl. ¶¶ 7, 39; Buck's Motion at 24.

[44] Buck has not put forward an affirmative damages expert, asserting that the issues of damages can be resolved on questions of law alone. The Court makes no determination regarding damages at this stage.

[45] Holdco's Motion at Section II.

[46] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Jan. 31, 2019) (citing Del. Super. Civ. R. 56)).

a matter of law."[47]  Finally, the Court may, in its discretion, deny summary judgment if it would be beneficial to further develop the facts and narrow the issues at trial.[48]

## III.   ANALYSIS

Before the Court addresses whether there is a genuine issue of material fact as to whether Cause existed, the Court must first address a threshold issue raised by Holdco.[49]  That is, whether Holdco only needed to make a good faith determination that Cause existed to satisfy the for-Cause condition to the repurchase option.

### A. Section 9.10(b) is Contingent on the Existence of Cause—not Holdco's Good Faith Determination Thereof

Delaware courts interpret contracts objectively,[50] and read contracts as a whole, giving effect to each provision and term.[51]  Absent ambiguity, the plain meaning of the contract's terms and provisions will apply.[52]  Language in a contract

[47] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997) (citing *Playtex FP, Inc. v. Columbia Cas. Co.*, 622 A.2d 1074, 1076 (Del. Super. 1992)).

[48] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("When confronted with a Rule 56 motion, the court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application.") (citing *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (finding a "trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial") (citation omitted).

[49] The parties dispute which side has the burden of proof to establish Cause.  Because neither party has met its burden that there is no genuine issue of material fact, the Court does not, at this stage, decide whether the burden that cause existed lies with Buck or Viking.

[50] *Plaze, Inc. v. Callas*, 2019 WL 1028110, at *4 (Del. Ch. Feb. 28, 2019).

[51] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[52] *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

is ambiguous if the language is susceptible to reasonable, conflicting interpretations.[53]

Section 9.10(b) requires that if Holdco elects to exercise its repurchase option of Buck's units, it may do so at their Original Cost if Buck "ceased to be employed . . . as a result of a termination for Cause."[54] Holdco determined that Novus terminated Buck for Cause, and accordingly, Holdco exercised a repurchase of his units at zero cost. In its motion for summary judgment, Holdco argues that so long as it made that determination in good faith, Holdco has satisfied the for-Cause condition to Holdco's repurchase right.[55]

Holdco's argument is not supported by the language of the Holdco Agreement. Buck seeks to preserve a contractual right for the fair market value of his units on the grounds that no Cause existed for his termination; nowhere in Section 9.10(b) is the contractual right conditioned on Holdco (or its Board's) good faith determination of the existence of Cause.

Holdco's reliance on the liability-limiting provisions in Section 5.7 of the Holdco Agreement misses the mark. Section 5.7(a) exculpates the Holdco Board from liability for actions taken in good faith reliance on its advisors.[56] Section 5.7(c)

---

[53] *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020) (citation omitted).
[54] Holdco Agreement § 9.10(b).
[55] Holdco's Motion at 24.
[56] *See* Holdco Agreement § 5.7(a).

grants the Holdco Board a conclusive presumption of good faith when it does so rely on its advisors.[57] Section 5.7(b) also permits the Holdco Board to broadly exercise its discretion for certain discretionary actions.[58]

Buck, however, is not seeking to hold Holdco or its Board personally liable by bringing fiduciary duty claims. If he were, good faith would be a relevant defense. Instead, Buck is bringing a contractual claim that is qualified upon the condition that the existence of Cause—not Holdco's good-faith determination thereof—triggers Buck's forfeiture of his right to the fair market value of his membership units. Accordingly, unless Cause existed, Buck is entitled to his interests for repurchase at their fair market value.[59]

---

[57] *Id*. § 5.7(c) ("…[A]ny Manager may consult with legal counsel, accountants, appraisers, management consultants, investment bankers and other consultants and advisors selected by it, and any act taken or omitted to be taken in reliance upon the opinion of such Persons as to matters that such Manager reasonably believes to be within such person's professional or expert competence shall be conclusively presumed to have been done or omitted in good faith and in accordance with such opinion.").

[58] *Id*. § 5.7(b) ("…the Board is permitted or required to take any action or to make a decision in its 'sole discretion' or 'discretion,' or that it deems 'necessary,' 'necessary or appropriate,' 'necessary or desirable' or 'necessary, appropriate or advisable,' or under a grant of similar authority or latitude, the Board shall, to the fullest extent permitted by applicable law, make such decision in its sole discretion (regardless of whether there is a reference to 'sole discretion' or 'discretion'), be entitled to consider such interests and factors as it desires (including the interests of a Unitholder with which any Manager may be affiliated), and shall have no duty or obligation (fiduciary or otherwise) to give any consideration to any interest of or factors affecting the LLC, its Subsidiaries or the Unitholders, and shall not be subject to any other or different standards imposed by this Agreement, any other agreement contemplated hereby, under the Delaware Act or under any other applicable law or in equity.").

[59] Holdco's reliance on the implied covenant of good faith and fair dealing to alter Section 9.10(b)'s contractual requirements is inapposite. *See* Holdco's Motion at 24–25; Plaintiff Michael Buck's Answering Brief to Defendant Viking Holding Management Company LLC's Motion For Summary Judgment ("Holdco's Opp.") at 24–26 (D.I. 196). Neither Holdco nor Buck bring a claim for a breach of implied covenant of good faith and fair dealing. Therefore, it is unusual for

14

As explained below, based on the record, there is a genuine issue of material fact as to whether Cause existed to terminate Buck.

**B. A Genuine Issue of Material Fact Exists Regarding Cause**

Holdco argues Cause for Buck's termination existed under two categories of the Holdco Agreement. Buck may be terminated for Cause if there is "(iii) . . . substantial and repeated failure, after written notice from [Holdco], to perform duties (or refrain from actions) as reasonably directed by [Holdco, Viking Parent, or Novus]."[60] Buck may also be terminated for Cause if there is "(iv) . . . gross negligence, willful misconduct or breach of fiduciary duty with respect to any of [Holdco, Viking Parent, or Novus] or their business relations that results (or reasonably could be expected to result) in a significant adverse effect on the business or affairs of [Holdco, Viking Parent, or Novus][.]"[61]

Under both categories, genuine issues of material fact exist in determining whether Cause existed to terminate Buck. First, it is unclear whether Buck received written notice, satisfying the "notice" prong under (iii). Although Holdco relies

---

Holdco to invoke case law of the implied covenant of good faith and fair dealing. Even if this case law applied, a party may not use the implied covenant to vary a contract's express terms, which would occur here by conditioning the repurchase option on a good faith determination of Cause alone. *See Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *11 (Del. Super. Aug. 7, 2019) (citation omitted). As found at the pleading stage, Holdco has not shown that Section 5.7 alters the requirements of Section 9.10(b). *See* Order September 3, 2021 (denying Holdco's motion to dismiss Buck's amended complaint).

[60] Holdco Agreement, Cause (iii).

[61] *Id.*, Cause (iv).

15

upon Buck's 2018 performance review,[62] the performance review does not appear to invoke any of the Cause categories. The review also appeared to occur nearly two years prior to Plaintiff's termination.[63] At this stage, the Court cannot determine whether the 2018 performance review constituted "written notice" under (iii) of Holdco's definition of Cause. Based on the record, the 2018 performance review may have been just that—a performance review.

Second, genuine issues of material fact exist as to Cause under category (iv). Holdco argues that the following events give rise to gross negligence and breaches of fiduciary duties: (1) Grant Thornton's audit findings reporting material weaknesses; (2) the anonymous whistleblower letter; (3) Buck's failure to alert the Novus Board of an employee's departure; (4) Plaintiff's denial of knowledge of the $1.7 million write-off and reversal and manual journal entries; (5) Grant Thornton's refusal to continue working with Novus if Buck remained as CFO; and (6) FGMK's report describing Novus' finance department's operations.[64]

Buck raises countervailing considerations sufficient to preclude a finding at the summary judgment stage that Cause existed under category (iv). First, there is no dispute that Novus was undergoing system-wide changes to its financial and

---

[62] Holdco's Motion at 33; Klusman Aff. Ex. AC (2018 Performance Review).
[63] Holdco's Motion at 33; Klusman Aff. Ex. AC.
[64] Holdco's Motion at 33–35.

16

accounting systems.[65]  Whether the transition and state of Novus' systems had any bearing on Buck's conduct and alleged consequent harm is a relevant issue that a trial will resolve.

Second, while the Thompson Coburn and Ernst and Young Reports flagged inconsistencies in Novus' accounting practices, the investigations had limitations. For example, Ernst and Young noted potential pressure to meet financial targets at year-end, but found that certain entries had no "mathematical impact" to Novus' income statements.[66]   Thompson Coburn found "potentially fraudulent" transactions, but could not make a determination that "intentional wrongdoing or fraud" occurred.[67]

Third, with respect to the employee's resignation, Thompson Coburn indicated that Buck's failure to alert the Novus Board of the incident may constitute a breach of fiduciary duty.[68]  Yet, in the interview conducted with Buck, Buck described the circumstances regarding the employee's resignation, and after Buck personally spoke with the employee, Buck "did not think there was an issue."[69] Oversight, or *Caremark* claims, can also be "the most difficult" to prove,[70] and

---

[65] Buck's Motion at 6, 11; Buck App. Ex. 23 at NOVUS01178-01180.
[66] Klusman Aff. Ex. F at HOLDCO-128; *Id*. Ex. G at HOLDCO-230.
[67] Klusman Aff. Ex. E at HOLDCO-108.
[68] *Id*. at HOLDCO-109.
[69] Klusman Aff. Ex. E. at HOLDCO-113.
[70] *Firemen's Ret. Sys. of St. Louis on behalf of Marriott Int'l, Inc. v. Sorenson*, 2021 WL 4593777, at *11 (Del. Ch. Oct. 5, 2021) (quoting *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

require a showing of bad faith.[71]  In light of this high bar, the circumstances surrounding Buck's failure to report the employee's resignation will benefit from further development at trial.

The technical and fact-intensive nature of Buck's tenure and the transition of Novus' financial system are not suitable for resolution on summary judgment.  A trial will resolve whether Buck's conduct amounted to gross negligence, willful misconduct or breaches of fiduciary duty, and whether the conduct resulted or could reasonably have resulted in a significant adverse effect on Novus.

### C.  *Daubert* **Motions**

Buck moves to exclude the testimony of Holdco's expert, Darren Schulman ("Schulman"), because of Schulman's lack of experience as an expert witness and as a Chief Financial Officer.[72]  Buck also argues that Schulman makes improper assumptions, legal conclusions, and did not consider Buck's responsibilities in the greater context of the challenges facing Novus, as well as other mitigating circumstances.[73]

Buck's objections do not preclude Schulman from testifying as an expert given Schulman's accounting background and the many accounting-related

---

[71] *In re McDonald's Corp. S'holder Deriv. Litig.,* 289 A.3d 343, 375 (Del. Ch. 2023) ("The officer must consciously fail to make a good faith effort to establish information systems, or the officer must consciously ignore red flags.").

[72] *Daubert* Motion to Exclude the Testimony of Defense Witness Darren Schulman at 3, 5 (D.I. 118).

[73] *Id*. at 6–9.

allegations raised in this action.[74] Buck's objections also go to the weight to be accorded to the expert testimony, and not its admissibility.[75] Buck will, of course, have the ability to cross-examine Schulman to highlight the alleged deficiencies in his testimony.

Holdco moves to exclude or limit the testimony of Buck's opening and rebuttal experts. Holdco argues that Buck's opening expert, Mark Roberts ("Roberts"), applies the incorrect legal standard in determining whether Cause existed.[76] Holdco also argues that Roberts' opinion goes outside the scope of the issues in the case by rendering an opinion of Buck's performance and omitting key details in his report.[77] Again, Holdco's objections go to weight and not admissibility, which the Court can properly consider at trial. Given Roberts' accounting qualifications and the accounting-related matters raised in the dispute, the Court does not find grounds to preclude Roberts' admission and can make its own determination as to whether Buck's conduct satisfied proper legal standards.

---

[74] *See* D.R.E. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reasonably applied the principles and methods to the facts of the case.").

[75] *Robinson v. Reg'l Hematology & Oncology, P.A.*, 2018 WL 2186700, at *5 (Del. Super. May 8, 2018) (citation omitted).

[76] Viking Holding Management Company LLC's *Daubert* Motion to Exclude the Opinions and Testimony of Mark Roberts at 4–6 (D.I. 120).

[77] *Id*. at 7, 9.

With respect to Buck's rebuttal expert, Ralph Koch ("Koch"), Holdco seeks to exclude or limit Koch's opinion on the basis that Koch's report exceeds the scope of rebuttal and "parrots Buck's factual narrative and theories of the case" based on *ex parte* interviews with Buck.[78]

Excluding Koch's testimony is unwarranted; his testimony will be limited to addressing Mr. Schulman's opening report. Unlike in most complex cases, the parties here did not enter into a stipulation governing expert discovery protocol. Had the parties done so, the objection related to *ex parte* interviews may have been avoided. At trial, Holdco can cross examine the grounds for Koch's testimony, and the Court can handle any objections as they are raised at trial.

## IV. CONCLUSION

For the reasons set forth above, Buck's Motion for Summary Judgment is **DENIED;** Buck's Daubert Motion to Exclude Testimony of Defense Witness Darren Schulman is **DENIED;** Defendant's Motion for Summary Judgment is **DENIED;** Defendant's Daubert Motion to Exclude the Opinions and Testimony of Ralph Koch is **DENIED;** and Defendant's Daubert Motion to Exclude the Opinions and Testimony of Mark Roberts is **DENIED.**

**IT IS SO ORDERED.**            */s/ Meghan A. Adams*

                              **Meghan A. Adams, Judge**

---

[78] Viking Holding Management Company LLC's *Daubert* Motion to Exclude the Opinions and Testimony of Ralph Koch at 2 (D.I. 119).